## TELEGRAPH COMPANY *v.* DAVENPORT.

## TELEGRAPH COMPANY *v.* DAVENPORT.

1. The officers of a corporation are the custodians of its books; and it is their duty to see that a transfer of shares of its capital stock is properly made, either by the owner himself or by a person having authority from him. In either case, they must act upon their own responsibility. Accordingly, when the name of the owner of a certificate of stock had been forged to a blank form of transfer, and to a power of attorney indorsed on it, and the purchaser of the certificate in this form, using the forged power of attorney, obtained a transfer of the stock on the books of the corporation, — *Held*, in a suit by such owner against the corporation, that he was entitled to a decree compelling it to replace the stock on its books in his name, issue a proper certificate to him, and pay him the dividends received on the stock after its unauthorized transfer, or to an alternative decree for the value of the stock, with the amount of the dividends.

2. The negligence of their guardian cannot preclude minors from asserting, by suit, their right to stock belonging to them, which was so sold and transferred. If competent to transfer it, or to approve of the transfer made, they must, to create an estoppel against them, have, by some act or declaration by which the corporation was misled, authorized the use of their names, or subsequently approved such use by accepting the purchase-money with knowledge of the transfer; but under the statute of Ohio, where the minors who are the complainants herein resided, they were not, nor, without the authority of the Probate Court, was their guardian, competent to authorize a sale of their property.

APPEALS from the Circuit Court of the United States for the Southern District of Ohio.

These are suits in equity to compel the defendant, a corporation created under the laws of New York, to replace, in the name of the complainants, certain shares of its capital stock alleged to have belonged to them, and to have been transferred without their authority on its books to other parties; and to issue to them proper certificates for the same; and also to pay to them the dividends received on the shares since such unau-

thorized transfer. In case the company fail to replace the stock, the complainants ask for alternative judgments for the value of their respective shares.

The facts upon which the suits rest are these: In March, 1865, Charles Davenport, a citizen of Ohio, died, leaving a widow and two minor children, the complainants here, his heirs. He was possessed at the time, besides other property, of eleven hundred and seventy shares of the capital stock of the Western Union Telegraph Company, which, upon the settlement of his estate, were distributed equally between the widow and children, in whose names, respectively, they were entered on the books of the company, and to whom separate certificates were issued. She was appointed guardian of the children. To her, as such, the certificates were delivered, declaring on their face that only upon their surrender and cancellation they were transferable in person or by attorney on the books of the company. On the back of each one was printed a blank form of transfer and power of attorney. She put those belonging to the children, with the one issued to her, and some government bonds, in a tin box, which was locked and deposited in the Fourth National Bank of Cincinnati for safe keeping. Her brother, Robert W. Richey, at that time and for some years afterwards an officer in the bank, had access to the box. He kept the key to it during her absence from Cincinnati, in order to get for collection the coupons attached to the bonds when they became due.

In February, 1871, he took from this box the certificate of three hundred and ninety shares belonging to the complainant, Henry Davenport, and forged his name to the transfer and power of attorney on its back, adding his own signature as that of an attesting witness. In this form he sold the certificate; and the purchasers, using the forged power of attorney, obtained a transfer of the shares on the books of the company. Subsequently, Mrs. Davenport was in Cincinnati, and on one occasion sent for the box, but returned it to the bank without opening it or examining its contents, and being about to depart for Europe, she left the key with her brother. Soon afterwards, he took from the box the certificate of shares belonging to the other complainant, Katharine Davenport, and forged her name

to a like transfer and power of attorney, adding, as in the former case, his own signature as that of an attesting witness. In this form her certificate was also sold, and by the purchaser a transfer was obtained under the forged power of attorney on the books of the company. When these forgeries were committed, both children were minors, Henry being seventeen, and Katharine fifteen years of age. Henry was at the time at school in Switzerland, and in the summer of 1871 Mrs. Davenport and Katharine went to Europe. None of them were informed of the pretended transfers of the stock until the spring of 1873, and in 1874 these suits were brought. They were originally commenced in one of the courts of the State of Ohio, and were removed to the Circuit Court of the United States upon application of the defendant. That court rendered a decree for each complainant, and the company appealed to this court.

The cause was argued by *Mr. Grosvenor Porter Lowrey* and *Mr. J. Hubley Ashton* for the appellant, and by *Mr. John F. Follett* for the appellees.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

Upon the facts stated there ought to be no question as to the right of the plaintiffs to have their shares replaced on the books of the company and proper certificates issued to them, and to recover the dividends accrued on the shares after the unauthorized transfer; or to have alternative judgments for the value of the shares and the dividends. Forgery can confer no power nor transfer any rights. The officers of the company are the custodians of its stock-books, and it is their duty to see that all transfers of shares are properly made, either by the stockholders themselves or persons having authority from them. If upon the presentation of a certificate for transfer they are at all doubtful of the identity of the party offering it with its owner, or if not satisfied of the genuineness of a power of attorney produced, they can require the identity of the party in the one case, and the genuineness of the document in the other, to be satisfactorily established before allowing the transfer to be made. In either case they must act upon their own responsi-

bility. In many instances they may be misled without any fault of their own, just as the most careful person may sometimes be induced to purchase property from one who has no title, and who may perhaps have acquired its possession by force or larceny. Neither the absence of blame on the part of the officers of the company in allowing an unauthorized transfer of stock, nor the good faith of the purchaser of stolen property, will avail as an answer to the demand of the true owner. The great principle that no one can be deprived of his property without his assent, except by the processes of the law, requires in the cases mentioned that the property wrongfully transferred or stolen should be restored to its rightful owner. The maintenance of that principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded.

We do not understand that the counsel of the appellant controvert these views, but they contend that the mother of the plaintiffs, as their guardian, was chargeable with culpable negligence in the keeping of the certificates, and, therefore, that the plaintiffs are estopped from claiming them or their value from the company. The negligence alleged consisted in the fact that she intrusted her brother with the key to the box in which they were deposited when she knew that he was insolvent, and that he had used, without her authority, funds received by him on a previous sale of a portion of her property; and the further fact, that when, in the summer of 1871, before leaving for Europe, she sent for the box, she returned it to the bank without examining its contents. To have allowed her brother, when known to be insolvent, to have access to the box after he had, without her authority, appropriated to his own use her funds, and to have returned the box to the bank in 1871 without examining its contents, were, according to the contention of counsel, offences of such gravity as to estop her wards, the minor children, from complaining of the company for allowing their stock to be transferred on its books under a power of attorney which he had forged. We do not think it at all necessary to comment at any length upon this singular position;

for even if it were possible, as it is not, to preclude the minor heirs from asserting their rights to property received from their father, by reason of any negligence of their guardian, we are unable to perceive any necessary connection between her brother's insolvency and misappropriation of her funds, and the forgery of the children's names, or between such forgery and her omission to open her box in 1871 and examine its contents. There is no circumstance here upon which an estoppel against the plaintiffs can be raised. To create an estoppel against them, there must have been some act or declaration indicating an authorization of the use of their names, by which the company was misled, or a subsequent approval of their use by acceptance of the moneys received with knowledge of the transfer. No act or declaration is mentioned, either of the guardian or her children, which tends in the slightest degree to show that any assent was given to the use of their names. But moreover, neither the guardian nor the children whilst they were minors, were competent, even by the most formal act, to authorize a transfer and sale of the property. Under the statute of Ohio, the intervention of the Probate Court was essential to any such proceeding. No inference could, therefore, be drawn from any negligence of theirs in support of a transfer of the property, where no order of that court authorizing a transfer had been made.

There are numerous decisions of the English and American courts in accordance with the views stated. They are cited by counsel in their briefs, and are given in a note to this opinion.[1] We do not think it important to refer to them specially, for no number of adjudications can add to the force of a simple statement of the facts. The decree of the court below in each case must be affirmed; and it is

*So ordered.*

[1] *Davis* v. *Bank of England,* 2 Bing. 393; *Hilgard* v. *South Sea Co. et al.,* 2 P. Wms. 76; *Stoman* v. *Bank of England,* 14 Sim. 475; *Taylor* v. *Midland Railway Co.,* 28 Beav. 287; *Ashby* v. *Blackwell,* 2 Eden, 299; *Lowry* v. *Commercial & Farmers' Bank of Baltimore,* Taney, C. C. Dec. 310; *Sewall* v. *Boston Water-Power Co.,* 4 Allen, 277; *Pratt* v. *Taunton Copper Co.,* 123 Mass. 110; *Chew* v. *Bank of Baltimore,* 14 Md. 299; *Pollock* v. *The National Bank,* 7 N. Y. 274; *Weaver* v. *Barden,* 49 id. 286; *Cohen* v. *Gwynn,* 4 Md. Ch. Dec. 357; *Dalton* v. *Midland Railway Co.,* 22 Eng. L. & Eq. 452; *Swan* v. *North British Australian Co.,* 7 Hurl. & Nor. 603.