or not defendant is possessed of the secret of manufacturing "Green's American Roofing Paint," or of his right to manufacture, use and sell the same, or what he claims is said paint.

Defendant is ordered to pay costs.

---

(Hamilton County Court of Common Pleas) —July, 1897.

## LOUIS KROHN v. THE CENTRAL RAILWAY & BRIDGE COMPANY, CORPORATION ORGANIZED UN· DER THE LAWS OF OHIO AND KENTUCKY.

1. Where a private corporation refuses to make a transfer of stock, the holder of such transfer may, at his election, sue at law for damages, or in equity to compel the acceptance of transfer and issuance of new certificate.

2. A corporation to whom transfer of stock is offered. may compel genuineness of transfer, etc., to be satisfactorily established.

3. Where the evidence establishes genuineness of transfer. the company cannot arbitrarily refuse to make transfer.

4. A transfer of stock to a fictitious person is void, and leaves the title in the transferor.

5. A party who transfers stock is not a necessary party to a suit by transferee against the corporation, to compel acceptance of transfer and issuance of new certificate.

---

S. W. SMITH, JR., J.

The plaintiff, in his first cause of action, says that on the 30th day of July, 1893, there was, standing in the name of Charles McNulty, upon the books of the defendant company, one hundred and sixty shares of the capital stock of The Central Railway & Bridge Company, which was represented by certificate No. 130, issued by defendant to said McNulty on the 3t0h day of March, 1892.

Plaintiff further alleges that, on the 30th day of July, 1893. said McNulty assigned and transferred to the plaintiff, said shares of capital stock, and endorsed and signed the assignment and transfer on the back of said certificate; that he presented said certificate and transfer at the office of the defendant company for surrender and for the purpose of obtaining a new certificate for said shares, in his own name, and demanded a transfer of the same; but the company, without any lawful excuse, declined and refused to issue any transfer of said stock to plaintiff, or any certificate for said shares. And he prays that the defendant may be required to receive said transfer and assignment and to issue a new certificate to plaintiff for said 160 shares of its capital stock.

The 2nd, 3rd, and 4th causes of action in the petition, together with the cause of action set up in the supplemental petition, are to recover dividends which have accrued upon said 160 shares of stock.

The 5th and 6th causes of action in the petition are to recover dividends declared upon 480 shares of the capital stock of said defendant company, owned by plaintiff.

To this petition the defendant files an answer in which it admits that on July 30, 1893, there was standing in the name of Charles McNulty, upon the books of said defendant, said 160 shares of the capital stock of said defendant, represented by certificate No. 130 of said company, and dated March 3, 1892. It admits, also, that said certificate, with what purported to be an assignment on the back thereof from said Charles McNulty, was presented at said defendant's office and request made that a new certificate for said 160 shares be issued to plaintiff, but that when said demand for said transfer was made it was represented to said defendant that said certificate had always been in the possession of the firm of brokers named P. J. Goodheart & Company, in this city, and had never been out of their possession, but that said certificate purported to have been assigned by said Charles Mc-McNulty, in the city of New York, and that defendant then demanded that the signature of Charles McNulty be identified or proved as the genuine signature of McNulty. The answer further alleges that plaintiff refused and still refuses to have said signature identified or proved, and that, in order to protect itself in issuing a new certificate. it refused to make said transfer for plaintiff. And asks to be dismissed.

The plaintiff, for reply to the answer of defendant, denies that at the time the demand for said transfer was made it was represented to the defendant that said certificate had never been out of the possession of said P. J. Goodheart & Company in this city; and denies that he ever refused or neglected, or does now neglect or refuse, to have said signature of Charles McNulty identified or proved; but alleges that in September. 1893, he did identify and prove said signature before a notary public, and did present this proof of said signature to said defendant, but said defendant still declined to transfer said stock.

Defendant's first claim is, that this suit is not properly brought. and that the action, if plaintiff is entitled to recover at all, should be by way of damages for the value of the stock, and not in equity to have a new certificate issued.

It is clear, however, that the remedy in such a case may be by either mode. (Cook on Stock and Stock-holders, secs. 390 and 391.) And our supreme court, in the case of State v. Carpenter, 51 Ohio St., page 83, distinctly says:

"That where the officers of a private corporation organized for profit, refuse, upon demand, to issue a certificate of stock to a person entitled thereto, his appropriate

remedy is by action against the corporation for damages, or in equity to enforce the issue and delivery of the certificate. If for any reason the one does not, the other will afford him a plain and adequate remedy, and he may resort to either, at his election.''

It would, therefore, seem clear that this suit is properly brought, the plaintiff having elected to bring a suit in equity to enforce the issue and delivery of the certificate.

The only issue raised by the pleadings and by the proof, therefore, is as to the genuineness of the signature of Charles McNulty to the assignment or transfer endorsed on the back of the certificate.

There is no doubt that, upon the presentation of a certificate of stock for transfer, if the company is doubtful of the identity of the party offering it with its owner, or if not satisfied of the genuineness of the power of attorney produced, it can require the identity of the party in the one case, and the genuineness of the document in the other, to be satisfactorily established before allowing the transfer to be made.

Morawetz, sec. 211. Telegraph Company v. Davenport, 97 U. S., 371. Chew v. Bank of Baltimore, 14 Marlyand, 300.    Bayard v. Farmer's Bank, 52 Pa. State, 232.

As the court says in Sargent v. Franklin Insurance Company, 8 Pickering, page 90.

''All that could be required of the person demanding transfer on the books would be to prove to the corporation his right to the property.''

There is no doubt as to the plaintiff having demanded a transfer of said shares of stock and the issuance of a new certificate, the only claim being that the signature of the transferor was not satisfactorily proved. And it is, therefore, for the court to say, from the evidence which is now before the court, whether or not, a sufficient and satisfactory identification of said signature has been made out.

The first reason assigned by defendant for not transferring said certificate of stock is that it believed that there was no such person as Charles McNulty. In other words that said Charles McNulty was a fictitious person.

If this contention be true, then a transfer to a fictitious person would be void, and would leave the parties as they were before the transfer.

Cook on Stock and Stock-holders, sec. 253; Muskingum Valley Turnpike Company v. Ward, 13 Ohio, 120.

Such an assignment is a mere nullity. It transfers no right, simply because there was no real person to receive it on its passing from the original proprietor. And the evidence in this case shows that the plaintiff was originally the owner, and held a certificate in defendant company for these 160 shares, and that, for purposes of sale, he assigned this certificate to Charles McNulty, in whose name said defendant company issued a new certificate. And if, therefore,

McNulty is a fictitious person, then the law would leave the parties as they were, and, no title having passed, the plaintiff would still be the owner of the 160 shares, for the reason, as above stated, that said assignment as a mere nullity.

But the evidence in the case satisfies the court that Charles McNulty is not a fictitious person.    The testimony of Henry Machol shows that he is acquainted with Charles McNulty, and that Charles McNulty is cashier and confidential man for the firm of P. J Goodheart & Company, and that during the year 1893, McNulty was in New York City, and that he had met him in the New York office of P. J. Goodheart & Company; and that about July 30th, 1893, the certificate of stock No. 130, in litigation in this case, was handed to him by the firm of P. J. Goodheart & Company, endorsed by Charles McNulty, to take over the river to be transferred to the plaintiff.

Therefore, from the evidence, the court is satisfied that there is such a person as Charles McNulty.

This being established to the satisfaction of the court, the next point to consider is, whether, or not, under the evidence, the signature of Charles McNulty to the assignment on the back of the certificate for 160 shares of stock is satisfactorily proved so as to order a transfer of said 160 shares of stock to plaintiff.  For, s above stated, the company could insist that the genuineness of the signature be satisfactorily proven.

The testimony of Machol is that about July 30th, 1893, this certificate was handed him by P. J. Goodheart & Company for presentation to the defendant company to be transferred to the plaintiff, and that the only thing upon the back of the certificate at that time was the name ''Charles McNulty;'' that he was familiar with Mr. McNulty's hand-writing; he took the certificate and witnessed the signature, and then presented it for transfer to the plaintiff; he told the defendant's officers who McNulty was, that he had not seen him sign the certificate, but knew his signature, and therefore witnessed it.  Defendant's officers stated that they did not believe there was such a man as Charles McNulty, and told witness that he would have to have the signature witnessed by a notary public.  He then took the certificate away, and it was sent to New York to have the signature of a notary public affixed, and the following words, ''Signed and subscribed before me this 3rd day of August, 1893.  Moses S. Hyman, Notary Public, N. Y. C., 260'' were written upon the back of the certificate, in the lower right-hand corner.  And upon its return to this city he again presented it to defendant company, asking to have it transferred to plaintiff; whereupon defendant company still refused to make said transfer, and wanted a certificate from the notary public. Witness then took the certificate away and sent it back to New York, and the third time presented it to the company for transfer, with the certificate of the notary public

attached certifying to the signature of Charles McNulty on the back of said certificate; whereupon the officers of said defendant company still refused to transfer it.

Defendant's testimony does not deny any of the material evidence of Machol as to the various presentations of the certificate for transfer, and no proof is offered tending to disprove McNulty's signature, except that defendant claims that Machol stated that this certificate has never been out of Cincinnati, but was in the possession of P. J. Goodheart & Company, in their safe in Cincinnati, Ohio, from the time said certificate was issued and delivered to Goodheart & Company up to the time of presenting same for transfer. But this statement Machol denies and says that he possibly might have said that it never left the possession of the firm of P. J. Goodheart & Company, and the certificate itself shows that upon two occasions at least it was in New York City.

There are other items of evidence in this case, which the court also considers; for instance, the fact that the certificate in litigation is now, and has been since July 30, 1893, in the possession of the plaintiff. The statement of the plaintiff also, that he endorsed the original certificate for 160 shares of stock, issued to him by defendant; that the name of Mr. McNulty was filled in said assignment at the suggestion of P. J. Goodheart & Company, that he left the certificate with P. J. Goodheart & Company for sale; that when P. J. Goodheart & Company failed to sell said stock, upon demand for the certificate, Goodheart & Company delivered to plaintiff the certificate now in litigation with the name of Charles McNulty upon the back, is very strong evidence tending to prove that plaintiff has always been the actual owner of these 160 shares of stock.

There is no claim made by defendant that Mr. McNulty has ever notified the company not to transfer said stock, and no demand for dividends by McNulty except such as plaintiff says he instructed P. J. Goodheart & Company to demand in the name of McNulty, so that as between the parties the evidence shows that McNulty has done nothing himself to indicate either to plaintiff or defendant that he considered that he had any interest in these shares of stock, or claimed any as against plaintiff, and in this view of the case, McNulty is not a necessary party.

See Tregear v. Water Company, 21 A. & Eng. Corp. Cases.

The court is of opinion, therefore, from all the evidence submitted, that the plaintiff has sufficiently proven the genuineness of the signature of Charles McNulty, though perhaps, in the first instance when the certificate was presented for transfer, the signature of Charles McNulty might not have been satisfactorily proved to the defendant company.

Plaintiff is therefore entitled to the relief prayed for.

As to dividends that have been declared, they must of necessity, follow the ownership of the stock.

And, as the right to the dividends declared on the 480 shares set up in the petition is not disputed, a decree may be taken for all these amounts.

Cohen & Mack, and Wm. Goebel, Attorneys for Plaintiff.

Paxton, Warrington & Boutet, and R. W. Nelson, for Defendant.