(156 App. Div. 247.)

GLOVER v. NATIONAL BANK OF COMMERCE OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 18, 1913.)

1. LIMITATION OF ACTIONS (§ 165*)—NATURE OF STATUTORY LIMITATION.

The statute of limitations is essentially a statute of peace, not affecting plaintiff's abstract right, but applying only to the remedy.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 649; Dec. Dig. § 165.*]

2. LIMITATION OF ACTIONS (§ 39*)—STATUTORY PROVISIONS—CONSTRUCTION—EQUITABLE ACTION.

Code Civ. Proc. § 388, providing that all actions the limitation of which is not specially prescribed must be commenced within ten years after the accrual of the cause of action, subjects all actions, whether at law or in equity, to some statutory limitation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 172, 190–211; Dec. Dig. § 39.*]

3. LIMITATION OF ACTIONS (§ 66*)—ACCRUAL OF CAUSE OF ACTION—DEMAND.

Code Civ. Proc. § 410, providing that where a right exists, but a demand is necessary to entitle one to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, etc., refers only to cases in which a demand is necessary to entitle one to sue, and does not apply to a cause of action for the wrongful act of a corporation in transferring stock on a forged power of attorney, for no demand is necessary to perfect a cause of action to compel the corporation to deliver to the rightful owner the stock or to pay the value thereof, and the right of action accrued the moment the wrong was done.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 353–375; Dec. Dig. § 66.*]

4. LIMITATION OF ACTIONS (§ 102*)—ACCRUAL OF CAUSE OF ACTION—DEMAND—"FIDUCIARY CAPACITY."

The term "fiduciary capacity" in Code Civ. Proc. § 410, providing that where a right grows out of the receipt or detention of property by one acting in a "fiduciary capacity" the time within which to sue thereon must be computed from the time the person having the right to make

a demand has actual knowledge of the facts, defines a relation based on personal confidence reposed by one person in another, and does not apply to an action against a corporation based on its wrongful transfer of corporate stock on a forged power of attorney.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. § 102.*

For other definitions, see Words and Phrases, vol. 3, pp. 2756–2760; vol. 8, p. 7663.]

5. LIMITATION OF ACTIONS (§ 100*)—FRAUD—ACTS CONSTITUTING.
Code Civ. Proc. § 382, subd. 6, providing that a cause of action for fraud is not deemed to have accrued until discovery of the facts, governs actions in which the fraud complained of is the essential fact constituting the gravamen of the cause of action and in which there would be no injury except for the fraud, and does not apply to an action against a corporation for wrongfully transferring stock on a forged power of attorney, and the mere fact that the complaint in the action against the corporation charges actual fraud in addition to alleging facts showing a transfer on the faith of a forged power of attorney does not make the cause of action one based on fraud which is actual and intentional fraud, involving bad faith on the part of the wrongdoer and not a mere breach of duty or the omission to exercise due care.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 323, 480–493; Dec. Dig. § 100.*]

6. LIMITATION OF ACTIONS (§§ 104, 192*)—PLEADING LIMITATIONS—CONCEALMENT OF CAUSE OF ACTION.
Where fraudulent concealment will prevent the running of limitations, it must consist of affirmative acts of misrepresentation, mere silence being insufficient, so that a mere general allegation of concealment is bad, and the specific acts relied on must be pleaded.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 511–513, 699–702; Dec. Dig. §§ 104, 192.*]

Appeal from Special Term, New York County.

Action by Laura Glover, administratrix of Harriet G. Glover, deceased, against the National Bank of Commerce of New York. From an order overruling a demurrer to a reply, defendant appeals. Reversed, and demurrer sustained.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John Quinn, of New York City, for appellant.
Willis T. Gridley, of New York City, for respondent.

SCOTT, J. In the form in which this case reaches us on the present appeal there is involved only the questions as to the availability of the statute of limitations as a defense to the plaintiff's claim.

The action is brought in equity to compel defendant to deliver to plaintiff 50 shares of its capital stock, or, if that be impossible, to pay to plaintiff the value of 50 shares thereof, and to account for the dividends earned upon 50 shares of said stock since the 4th day of March, 1868. The plaintiff is the administratrix of Harriet G. Glover, who, as it is alleged, was the owner of 50 shares of the capital stock of the defendant from August 31, 1865, down to and until March 4, 1868, upon which date, as the complaint charges:

"The defendant, by or through the negligence or carelessness of some of its officers, servants, or agents, and without fault on the part of the said Harriet G. Glover, and upon a forged power of attorney, on or about the said 4th day of March, 1868, accepted the surrender of said certificate of stock, belonging to the said Harriet G. Glover as aforesaid, and canceled the same, and in lieu thereof issued two new certificates therefor, one to Eliza Pritchard for 6 shares of said stock and one to Baldwin and Weeks (or 'Neal') for 44 shares, thereby divesting the said Harriet G. Glover of the title to said 50 shares of the capital stock of said defendant bank and depriving her and her heirs or representatives of the value of the same and the dividends arising therefrom."

Then follow appropriate allegations respecting the value of the stock; the declaration of dividends; the refusal of defendant to pay said dividends to plaintiff or her intestate, or to acknowledge the right of said plaintiff or her intestate to receive the stock. It is reiterated that the power of attorney under which the transfer was made was forged and did not bear the valid signature of plaintiff's intestate, and that the defendant's act in transferring the stock was an act of gross carelessness on the part of defendant, and its acts in that regard are characterized as extremely unjust and inequitable. No demand upon defendant to return the 50 shares of stock and to pay the dividends thereon is alleged except on July 7, 1910.

The answer puts in issue the material allegations of the complaint and alleges three separate defenses: First, that the alleged cause of action stated in the complaint did not accrue within ten years before the beginning of this action; second, the alleged cause of action stated in the complaint did not accrue within 20 years before the beginning of this action; third, the alleged cause of action stated in the complaint did not accrue within 6 years before the beginning of this action. The amended reply denies that the 10, 20, or 6 year periods have elapsed between the date when the cause of action set forth in the complaint accrued and the commencement of this action. It also alleges three separate avoidances, which are as follows: First. That plaintiff's intestate, during her life, and plaintiff, individually or as administratrix as aforesaid, prior to six years before the commencement of this action, did not know (a) of the existence of the cause of action alleged, (b) the facts set forth in the complaint, (c) the fact that said shares were wrongfully and illegally transferred by said defendant. Second. That defendant wrongfully and illegally (a) concealed from the said plaintiff's intestate during her lifetime her ownership in the said shares; (b) omitted and neglected to pay dividends or notify said plaintiff's intestate and this plaintiff of the declaration of dividends upon said shares, or give her notice of meetings of stockholders, or of any act notice of which is required to be given by law to shareholders of the defendant; and (c) wrongfully omitted to give plaintiff notice of said facts, "but fraudulently concealed the said facts from said plaintiff's intestate and this plaintiff until six years prior to the commencement of this action." Third. That defendant acted with respect to the said shares "as trustee for and in a fiduciary capacity towards said plaintiff's intestate" and this plaintiff, and "that the facts set forth in plaintiff's complaint establish a trust obligation imposed by the defendant towards the said plaintiff's intestate as

owner of said shares, against which the several statutes of limitations pleaded by the defendant as separate defenses do not run and are no defense to the right of the plaintiff to recover in this action." The defendant demurs to the separate and distinct alleged replies set forth in the plaintiff's amended reply to the defendant's special defenses of the 10, 20, and 6 year statutes of limitation respectively, upon the ground that said separate and distinct alleged replies are insufficient in law upon the face thereof. The present appeal raises only the question of the sufficiency of the alleged avoidances pleaded in the amended reply.

[1, 2] It is quite clear, and the defendant so concedes, that the complaint states a good cause of action. Pollock v. National Bank, 7 N. Y. 274, 57 Am. Dec. 520; Telegraph Company v. Davenport, 97 U. S. 369, 24 L. Ed. 1047. Hence, if the allegations of the complaint are sustained by the proofs, as on this appeal we must assume that they will be, the plaintiff will be entitled to a judgment unless the statute of limitations proves to be an effective bar to a recovery. That statute is essentially a statute of peace not affecting the plaintiff's abstract right, but applying only to the remedy. It is the policy of the state, as defined in the Code of Civil Procedure, that there shall be a fixed limitation for every cause of action whether legal or equitable. After attaching suitable limitations to numerous classes of actions, the Code adds (section 388):

"An action, the limitation of which is not specially prescribed in this or the last title, must be commenced within ten years after the cause of action accrues."

This provision of the Code adopted in 1848, and continued since, has done away with the old rules as to the cases cognizable only in courts of equity and subjected all alike to some statutory limitation. Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554; Treadwell v. Clark, 190 N. Y. 51, 82 N. E. 505. Under the allegations of the complaint a cause of action accrued to plaintiff's intestate on March 4, 1868, more than 42 years before the present action was commenced, and it would seem therefore that the right to recover upon it was long since barred by the statute of limitations unless some reason appears why the running of the statute has been postponed or suspended.

The plaintiff relies upon two sections of the Code of Civil Procedure to avoid the plea of the statute.

[3] The first section thus relied upon is section 410, which reads as follows:

"Sec. 410. Provision when the action cannot be maintained without a demand. Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time, within which the action must be commenced, must be computed from the time, when the right to make the demand is complete; except in one of the following cases: (1) Where the right grows out of the receipt or detention of money or property, by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time, when the person, having the right to make the demand, has actual knowledge of the facts, upon which that right depends. (2) Where there was a deposit of money, not to be repaid at a fixed time, but only upon a special demand, or a delivery of personal property, not to be re-

turned, specifically or in kind, at a fixed time or upon a fixed contingency, the time must be computed from the demand."

This section refers only to cases in which a demand is necessary to entitle a person to maintain an action, and the first inquiry suggested is whether or not this is such an action. We are satisfied that it is not. The injury to plaintiff's intestate was accomplished, and her right of action complete at the moment that her shares were wrongfully transferred upon the faith of the forged power of attorney. No demand was necessary to perfect the cause of action, because the sole object of a demand is to convert an otherwise lawful possession into an unlawful one.· MacDonnell v. Buffalo Trust Company, 193 N. Y. 92–101, 85 N. E. 801. The distinction between a cause of action which requires a demand to sustain it, and one which does not, is well illustrated in Ganley v. Troy City National Bank, 98 N. Y: 487. In that case the plaintiff sued for the breach of an express contract by the terms of which certain United States Treasury notes were to be held by the defendant for the depositor until the surrender of the receipt evidencing such deposit. More than six years prior to the commencement of the action the bank had wrongfully surrendered and delivered the notes to the husband of the depositor without her consent, and without the production and surrender of the receipt. The action was, in form, one for damages for breach of the express contract in refusing to deliver the bonds upon the production and surrender of the receipt. The defense was the statute of limitations. The court pointed out that the act of the defendant in wrongfully delivering the notes to the depositor's husband constituted a conversion, and that the plaintiff might have sued in trover, and that, if she had so sued, the action would have been barred by the six-year statute, even if the facts were unknown to the depositor, for the cause of action would have been complete when the conversion was effected, and no demand was necessary to lay the foundation for an action for conversion against the depository, and that, in the absence of the necessity for a demand, the statute began to run from the moment of the commission of the wrong. But it was held that since the plaintiff elected to waive the tort, and sue upon the express contract, no cause of action arose until a demand and refusal, because, until a demand, the possession of the depository was lawful, and a demand was necessary to convert it into an unlawful withholding. It was with reference to such a contract that the court used the expression that:

"In such a case a tort-feasor cannot allege his own wrong for defeating an action upon the contract."

In other words, in the case of a cause of action of which a demand and refusal is an essential element, a defendant cannot claim the advantage of the statute because, before the demand had been :made and the cause of action had accrued, he had wrongfully incapacitated himself from complying with the demand when it should be made. In the present case no express contract is alleged between plaintiff's intestate and the bank. Although the action is in form

one for specific relief, and not for conversion, the allegations of the complaint would support equally well an action for conversion. What the plaintiff is suing for is the reparation of a wrong, not the fulfillment of a specific contract. Her right, or that of her intestate, accrued the moment the wrong was done, and no demand was necessary to make that wrongful which was already so.

[4] But even if it should be considered that the present is a case in which a demand is necessary to constitute a cause of action, still the section of the Code above quoted does not help the plaintiff. By that section, where a demand is necessary to entitle a person to maintain an action, the time within which the action must be begun is to be computed from the time when the right to make the demand is complete (in this case the moment the wrongful transfer was made), except in one of two cases defined in subdivisions 1 and 2. The second subdivision is obviously inapplicable to a case like the present, and the plaintiff must rely upon the first, which applies to a case in which the right of action "grows out of the receipt or detention of money or property by an agent, trustee, attorney or other person acting in a fiduciary capacity." The plaintiff's contention is that this subdivision is applicable, because, as it is insisted, a bank stands in a fiduciary relation towards its stockholders in so far as it undertakes to transfer shares of stock upon its books, and by accepting the surrender of certificates of stock and issuing new certificates. This position is sought to be fortified by a line of cases which speak of a bank or other corporation as acting as trustee for its stockholders in the matter of transferring shares of stock. These cases follow and rely upon a dictum of Chief Justice Taney, sitting in the Circuit Court, in Lowry v. Commercial Bank, 15 Fed. Cas. 1040, to this effect:

"The power (of transferring stock) thus vested in the corporation is a trust placed in the hands of the corporation for the protection of individual interest, and like every other trustee it is bound to execute the trust with proper diligence and care and is responsible for negligence or misconduct."

In a broad sense this statement is accurate enough, but we think it entirely clear that the learned Chief Justice did not use the words "trust" and "trustee" in their technical sense, and that, so far as concerns the transfer of stock, a corporation cannot be said to act towards its stockholders in a "fiduciary capacity" in the sense that these words are used in the Code of Civil Procedure. What was undoubtedly meant by the framers of the Code in using the words "fiduciary capacity" was to define a relation based upon the personal confidence reposed by one person in another. Clowes v. Mayor, etc., 47 Hun, 539. The same words are used in subdivision 2, § 549, of the Code of Civil Procedure, re-enacting section 179 of the Code of Procedure, which provides that a defendant may be arrested in an action "where it is alleged in the complaint that the money was received or the property was embezzled or fraudulently misapplied * * * by a factor, agent, broker, or other person in a fiduciary capacity." There have been numerous decisions in this state defining what is meant by the words "fiduciary capacity" as used in

this section. The rule has been settled that by a "fiduciary relation" is meant one which arises from a special trust and confidence reposed in one person by another (Moffatt v. Fulton, 132 N. Y. 507, 30 N. E. 992), and that it contemplates good faith, rather than mere legal obligation, as the basis of the liability.

It is said in Anderson's Dictionary of Law, p. 459, that the words "fiduciary" and "confidential" are commonly used by courts and law-writers as convertible expressions, and Bouvier says that the term "fiduciary" has been held to apply to all persons who occupy a position of *peculiar confidence* towards others, such as a trustee, executor, administrator, director of a corporation or a society. Law Dict. tit. "Fiduciary." A similar construction has been given to the use of the words "fiduciary capacity" in subdivision 4, § 17, of the National Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3428]), concerning which it has been held that the words do not apply to cases of implied trusts but only those technical trusts which are actually and expressly constituted by the parties. Mulock v. Byrnes, 129 N. Y. 23–25, 29 N. E. 244. An examination of the reasoning adopted in the cases which have held a corporation liable to a stockholder for an unauthorized transfer of his shares will show that they all proceed upon the theory that the corporation has committed a wrong in the nature of a conversion, and not a single one of them bases the stockholder's right to recover upon any theory of a special trust and confidence vested in the corporation by the shareholder. Pollock v. National Bank, supra; Telegraph Company v. Davenport, supra. We are therefore of the opinion that the defendant's plea of the statute of limitations cannot be avoided by the terms of section 410 of the Code of Civil Procedure.

[5] The plaintiff also relies upon subdivision 6 of section 382 of the Code of Civil Procedure, which is the section specifying the cases to which the six-year statute of limitations applies. That section provides that an action must be commenced within six years if it be brought "to procure a judgment, other than a sum of money, on the ground of fraud, in a case which on the 31st day of December, 1848, was cognizable by the Court of Chancery." The exception, upon which plaintiff relies, reads as follows:

"The cause of action in such a case is not deemed to have accrued until the discovery, by the plaintiff or the person under whom he claims, of the facts upon which its validity depends."

The plaintiff's argument is that this exception is applicable to her cause of action because she did not discover the facts upon which that cause of action arose, until within less than six years before bringing her action. But this argument must be unavailing unless it can be said that the right of action arose from a "fraud" committed by defendant in making the unauthorized transfer, and this leads to a consideration of the precise meaning to be given to the word "fraud" as used in the section quoted, and the character of the wrong committed by defendant in transferring the shares. It may be observed, in the first place, that the complaint does not directly or inferentially charge the defendant with having been guilty of any con-

scious or intentional fraud against plaintiff's intestate. It does not even allege that defendant knew, or had cause to know, or had any notice whatever, that the power of attorney was forged. On the contrary, what the defendant is expressly charged with is negligence, or, as it is termed, "gross carelessness." But even if the complaint did charge actual fraud, in addition to what is already alleged, such an allegation would add nothing to the cause of action, which is complete as it stands. Hence the interpolation of an unnecessary allegation of fraud would not serve to transform the action into one founded on fraud. Carr v. Thompson, 87 N. Y. 160.

It seems too clear to need extended argument or the citation of numerous authorities to demonstrate that the only actions covered by subdivision 5 of section 382 are actions in which the fraud complained of is the essential fact which constitutes the gravamen of the cause of action, and in which there would be no injury except for the fraud. Oakes v. Howell, 27 How. Prac. 145; Exkorn v. Exkorn, 1 App. Div. 124, 37 N. Y. Supp. 68. It is equally clear, as we consider, that the fraud which will entitle a plaintiff to the benefit of the exception is actual and intentional fraud, involving mala fides on the part of the defendant sought to be charged, and not a mere breach of duty, or the omission to exercise due care, which are sometimes loosely designated as "legal fraud" or "constructive fraud." The distinction was well stated by Chief Judge Andrews in Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651, wherein it was held, in an action for fraud consisting of false representation, that something more was necessary than to show that the misrepresentation was false and was material. It was held that in addition, in order to constitute actionable fraud, it must appear that the misrepresentation was knowingly false, or was made with a disregard as to whether it was true or false. The court said:

"Misjudgment however gross, or want of caution however marked, is not fraud. Intentional fraud, as distinguished from a mere breach of duty, or the omission to use due care, is an essential factor in an action for deceit."

It is apparent that all which is charged against the defendant is a breach of duty and *a failure* to exercise due care. This is not such fraud as is contemplated by the section now under consideration.

[6] The reply gains nothing by the inclusion of allegations that after the wrong had been done to plaintiff's intestate the defendant concealed the facts from her and from plaintiff. Mere concealment is not made a bar by the statute. In certain cases, of which this is not one, ignorance of the facts postpones the running of the statute, but, except in such cases, ignorance, whether induced by concealment or otherwise, has no such effect. And even where fraudulent concealment will postpone the operation of the statute it must be something more than mere silence, and must consist of some affirmative act of misrepresentation or the like. Wood on Limitation of Actions, § 276; 25 Cyc. p. 1218; 19 Am. & Eng. Ency. pp. 52, 53. The mere general allegation of concealment such as is contained in the present reply does not import or charge the commission of any such affirmative act, but would be fully satisfied by proof that defendant had kept

silence, perhaps through ignorance of plaintiff's rights. To make out a case of fraudulent concealment the specific acts relied upon to establish it should be alleged. Mere general allegations of concealment, like general allegations of fraud, are of no value in stating a cause of action (Knowles v. City of N. Y., 176 N. Y. 430, 68 N. E. 860), and of no greater value in a reply. Our conclusion therefore is that the reply contains no effective avoidance of defendant's plea of the statute of limitations, and that the demurrer thereto must be sustained.

Order appealed from reversed with $10 costs and disbursements, and demurrer sustained with $10 costs. All concur.