GILCHRIST TRANSPORTATION COMPANY, Appellant, *v.* WORTH-INGTON & SILL, Respondent.

Fourth Department, July 6, 1920.

Insurance — judicial notice of custom of agents to adjust claims — action to collect moneys received by insurance agent on marine policy — limitation of action — when action barred by six-year statute — when agent not acting in fiduciary capacity — insurance agent not " foreign factor "— when demand not necessary to start running of Statute of Limitations.

The court will take judicial notice of the fact that it is customary for insurance agents to adjust and collect the claims of the insured where such agent takes entire charge of the insurance business of a large insurer.

An insurance agent employed to collect a loss occurring under a marine policy of insurance while acting as agent is not acting in a fiduciary capacity, and, hence, where such agent, having turned over the proceeds of the policy to the insured, subsequently collected an additional amount under a so-called " sue and labor " clause, an action by the insured to recover said sum is barred by the six-year Statute of Limitations.

The insurance agent which collected such sum was not a " foreign factor " as the term is used in marine insurance merely because the plaintiff's business was located in one State and that of the defendant was located in another.

" Foreign factor " defined.

While such insurance agent employed to collect the proceeds of a marine policy occupies a position of trust and confidence with its principal there was no express trust, and said agent is not in the same position as an attorney at law or a foreign factor, so that a demand against it for moneys collected is not necessary before action may be brought.

As the action to recover moneys collected by said insurance agent is an action for a breach of contract and not for fraud, the right of action against the agent accrued when it received the money and was not delayed until demand therefor was made by the principal.

APPEAL by the plaintiff, Gilchrist Transportation Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 24th day of September, 1919, upon the decision of the court, rendered after a trial at the Erie Trial Term, dis-. missing the complaint, the jury having been dismissed after both parties moved for a directed verdict.

*Ray M. Stanley* and *Ellis H. Gidley,* for the appellant.

*Clark H. Timerman,* for the respondent.

HUBBS, J.:

This is an appeal from a judgment entered in the Erie county clerk's office on the 24th day of September, 1919, in favor of the defendant dismissing the complaint.   The jury was excused by consent and findings of fact were made by the trial court. The action was brought to recover $1,479.25, with interest, being money belonging to the plaintiff which was collected by the defendant while acting as agent for the plaintiff.   The plaintiff is an Ohio corporation.   The defendant is a New York corporation which was organized to take over the business of the copartnership of Worthington & Sill, insurance agents, of Buffalo, N. Y.   The transaction in question occurred between the plaintiff and the copartnership before the formation of the defendant corporation.   The plaintiff owned a large fleet of boats on the lakes.   Worthington & Sill for years had insured these boats.   They were the local agents of some of the insurance companies carrying insurance on the boats and some of the insurance was placed by them as brokers in companies which they did not represent.

The facts in this case are undisputed and found by the trial court except that it refused to find that said insurance agents were acting in a fiduciary capacity.   During the years that said agents had acted for the plaintiff it had been the practice and custom, in case of a loss, for the plaintiff to send the papers, with policies indorsed, to the said agents, who would take the

Fourth Department, July, 1920.        [Vol. 193.

matter of the loss up with the insurance companies, look after its adjustment, and turn over the proceeds of the adjustment to the plaintiff. I think we may take judicial cognizance of the fact that that is the usual and ordinary practice where an insurance agency has charge of the entire insurance business of a large company.

In 1903 the vessel *John Craig* stranded, while laden with a cargo of corn, bound from Chicago to Meaford, Ont. The form of the policy upon the *John Craig* was known as the " lake hull " policy. It contained a clause known as the " sue and labor " clause, an ordinary clause in a marine policy. After the disaster to the *John Craig* an effort was made to salve her. These efforts were continued from June 25, 1903, the date of the accident, to June 30, 1903, when the underwriters took charge of the efforts to salve the boat. They continued the efforts for some time thereafter. During that period the plaintiff incurred expenses, which expenses amounted to the sum sued for in this action.

After the loss all of the papers and policies were turned over to said agents to look after the adjustment in the ordinary course of business. They procured an adjustment of the loss under the policies and turned over the proceeds to the plaintiff, excepting, however, a claim of the plaintiff under the " sue and labor " clause. The amount of the claim of the plaintiff under that clause was held in abeyance and not paid over or collected at that time. Some time later the agents collected of the companies the sum claimed in the complaint under the " sue and labor " clause. Meanwhile, the plaintiff had gone into the hands of a receiver and remained in the hands of a receiver for six years when its financial matters were adjusted and the receiver was discharged. Meanwhile the defendant corporation had taken over the affairs of the copartnership of Worthington & Sill. Thereafter, and in 1913, the plaintiff discovered that the said insurance agents had collected said sum under the " sue and labor " clause about seven years before. The plaintiff made a demand upon the defendant for the amount; it was not paid and this action was brought.

The trial court found substantially every claim of the plaintiff. It found that the defendant had collected the money under the " sue and labor " clause while acting as agent,

trustee and attorney in fact for the plaintiff and that it had failed to turn it over to the plaintiff, but dismissed the complaint upon the ground that the cause of action was barred by the six-year Statute of Limitations. The plaintiff requested the trial court to find that the defendant was acting, in the transaction in question, in a *fiduciary capacity* as agent, trustee and attorney in fact for the plaintiff. The court found as requested except that it struck out the words *fiduciary capacity*.

The " sue and labor " clause referred to in the policy is a clause which does not undertake to indemnify the assured for the loss or any portion of it, but it is a clause inserted for the benefit of the insurance company to encourage the assured to make an effort to salve the wreck for the benefit of the insurance company and to prevent a total loss, if possible. It is, in effect, an agreement outside of the indemnifying clause of the policy, in which the underwriter agrees to pay to the assured the expenses which he may incur in preventing a further loss which, if it occurred, would fall on the underwriter under the indemnifying clause of the policy. The reason for the clause is that the assured might abandon the wreck and look to the insurers to indemnify him for the loss if he did not have assurance that he could recover the expenses which he might incur in trying to salve the wreck. It is an addition to the indemnifying insurance provided in the policy.

The first contention of the appellant upon this appeal is that the defendant was the foreign factor of the plaintiff, because the plaintiff was located in Ohio and the defendant was located in another State, the State of New York, and that the position which the defendant occupied in relation to the plaintiff constituted it the plaintiff's factor. It seems to me that there is no force in this argument. A foreign factor, as understood in marine matters, occupied an entirely different position from insurance agents or brokers. He was a person who had charge of the property, the cargo, to handle it, dispose of it and convert it into money or exchange it for other property. In olden times he often sailed with the boat. He had nothing to do with the management of the boat. His duties only commenced when the port of destination was reached and the personal property was turned over to him by the master of the boat. Much has been written, in history and in fiction, in

regard to the jealousies which existed between factors and masters of boats, and many of the disasters connected with the attempts to colonize America grew out of the jealousies and conflict of authority between factors and masters of the boats, especially in the attempts of the French to found colonies in North America. In those days the factor represented the owner in a distant country and the owner was compelled to place his property under the charge and control of a factor and it necessarily followed that a person occupying that position occupied a fiduciary relationship to the owner of the cargo. The question is deemed important by the plaintiff because of a statement in the opinion in the case of *Wood* v. *Young* (141 N. Y. 211) which seems to indicate that a factor and attorney at law occupied such a relationship that the ordinary rule of the Statute of Limitations would not apply, and it is for that reason that the plaintiff seeks to establish that the defendant occupied that relation to the plaintiff in this case. It seems to me, however, that such relationship did not exist, as a factor is one who has the possession and control of personal property intrusted to his care by the owner for the purpose of selling the goods or merchandise, is intrusted with the possession, management and disposal of the goods and has a special property in them. If he sails with the boat he is called a supercargo, but he has no authority over the goods during the voyage. His authority attaches only when the goods are landed. If he has to do with goods sent to a foreign country, and handles goods there or sails with the vessel, he is called a foreign factor. (19 Cyc. 115; 2 Joyce Ins. § 624; Bouvier L. Dict.)

In the case at bar neither the boat nor the cargo was ever intrusted to the insurance agents. All that the plaintiff did was to place the bill and the policies in their possession with instructions to collect it for the plaintiff, and the money was paid to them by the insurance companies simply for the purpose of turning it over to the plaintiff. Instead of being foreign factors they were simply insurance agents and brokers acting within the well-known scope of their authority. I think it clear, therefore, that they did not come within the exception referred to in the opinion in *Wood* v. *Young* (*supra*).

The next point of the appellant is that by the custom of the

marine trade the defendant was acting in a fiduciary capacity. It is undoubtedly true that the defendant occupied a position of trust and confidence and that is always true in any case of agency where a party places confidence in the one acting for him as agent, but that does not place every agent who has the confidence of his principal and who is trusted by his principal in the same category as an attorney at law or a foreign factor so that a demand is necessary before an action may be brought against him.

The third point of the appellant is that the defendant, being lawfully in possession of the money collected under the " sue and labor " clause, a demand was necessary before suit could be brought and cases are cited to the effect that where one comes lawfully into possession of property he cannot be charged with *conversion* thereof until after demand and refusal, such holdings being based upon the ground that the sole object of the demand is to convert an otherwise lawful possession into an unlawful one. In such a case the refusal furnishes the evidence of the conversion. The plaintiff urges, therefore, that no action could have been brought by the plaintiff against the defendant until the demand had been made and that, therefore, the Statute of Limitations did not run. Under the statute the action must be commenced within six years after the cause of action has accrued (Code Civ. Proc. §§ 380, 382), and this period of limitation must be computed from the time of the accrual of the right to relief by action. The question here is, therefore, when did a right of action accrue to the plaintiff against the defendant. It is urged by the appellant that it did not accrue until the demand was made. It was held by the trial court that the right to bring the action accrued as soon as the money was received by the defendant. In that connection it should be noted that this is an action for breach of contract and not an action for fraud.

It is conceded that section 382 of the Code of Civil Procedure, the six-year Statute of Limitations, applies in this case unless section 410 applies, for the reason that the statute did not begin to run until the demand was made. The respondent claims, however, that, at most, it was an action for money had and received, that it was not based on fraud and that there was no *express trust* which required a demand to terminate it,

and that the money, when collected, was immediately payable to the plaintiff. As stated before, the claim of the appellant is that there was a trust relationship which entitled the defendant to hold the money in question and that the defendant was rightfully in possession of the money and that the plaintiff could not collect it until after a demand was made; that, therefore, the Statute of Limitations did not commence to run until the plaintiff discovered that the defendant had collected the money and held it in its possession. Such contention is based on section 410 of the Code of Civil Procedure, which reads as follows: " Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time, within which the action must be commenced, must be computed from the time, when the right to make the demand is complete; except in one of the following cases:

" 1. Where the right grows out of the receipt or detention of money or property, by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time, when the person, having the right to make the demand, has actual knowledge of the facts, upon which that right depends."

It has been held, however, repeatedly, that where money is received by one for another under circumstances which make it the duty of the one receiving the money to pay it over, an action for money had and received may be brought to recover such sum of money without a demand, and the Statute of Limitations begins to run from the date of the receipt of the money. (*Mills* v. *Mills*, 115 N. Y. 80.)

However, if there is an *express subsisting trust* the statute does not begin to run against the beneficiary until the trustee has openly repudiated the trust. This rule, however, is not applicable to a trust *ex maleficio*, and applies only to *express trusts.* (*Lammer* v. *Stoddard*, 103 N. Y. 672.)

The case of *Wood* v. *Young* (*supra*) seems to be directly in point. In that case the plaintiff executed to her half-brother, the defendant's testator, a power of attorney authorizing him to collect the amount of an insurance policy held by her upon the life of her deceased husband. He collected the money and, without the consent of the plaintiff, appropriated it and never accounted for it. Ten years after the action was brought to

recover the money. It was held that the Statute of Limitations applied and that no trust or fiduciary relation existed between the parties growing out of their relationship which required a demand or actual knowledge of the facts by the plaintiff before the right of action accrued; that the only legal relation between the parties was that of debtor and creditor. Judge O'BRIEN said in his opinion: " The deceased had received from the insurance company moneys that belonged to the plaintiff by her direction and authority. It was the ordinary case of the receipt of money by one to and for the use of another, in which the duty rests upon the party receiving the money, from the moment of its receipt, to pay it over to the party for whose use it was received. It was the plaintiff's money. The deceased had no lien upon it — no right to retain it, nor any trust duty to discharge in respect to it. The law imposed upon him the obligation to pay it over to the plaintiff as soon as received, or at least within a reasonable time. There was nothing in the circumstances under which the money came to the hands of the testator from which the right or duty can be implied to hold it until actually called for by the owner. The obligation of the party who has received the money in such cases [is] to pay it over, and his liability in an action to recover the same, without any demand before suit, has been firmly settled by a long line of cases that cannot be distinguished from this by any sound distinction. [Citing many cases.] The case of an attorney at law or a foreign factor is, perhaps, an exception to this general rule."

In *Glover* v. *National Bank of Commerce* (156 App. Div. 247) it was held that the right of action against plaintiff's agent for failure to discharge his duty is not based upon fraud and that the Statute of Limitations begins to run from the omission and not from the time when the plaintiff discovered it. (See, also, *Campbell* v. *Culver*, 56 App. Div. 591; *Libby* v. *Van Derzee*, 80 id. 494; affd., 176 N. Y. 591; motion for reargument denied, 177 id. 567.)

I think it clear that no fiduciary relation existed; that a demand was not necessary before an action could be brought; that there was no express trust, and that the Statute of Limitations commenced to run from the time that the defendant

received the money. I do not think that the cases cited by the appellant hold any thing to the contrary.

It, therefore, follows that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed, with costs.