THE CITIZENS NATIONAL BANK *v.* STATE OF INDIANA, EX REL. KELLOGG.

[No. 21,917. Filed April 23, 1913. Rehearing denied June 3, 1913.]

1. MANDAMUS.—*Complaint.*—*Sufficiency.*—Where defendant voluntarily appeared and filed demurrer to a complaint for a writ of mandamus, the sufficiency of the complaint must be determined as in any other action. p. 631.
2. CORPORATIONS.—*Stockholders.*—*Unauthorized Transfer of Stock on Corporation's Books.*—*Mandamus.*—*Complaint.*—A stockholder whose certificate of stock recites that such stock is transferable only on the books of the corporation in person or by attorney

Citizens Nat. Bank *v.* State, ex rel.—179 Ind. 621.

and on surrender of such certificate, may compel the corporation by mandamus to recognize him as a stockholder and to grant the rights and privileges due to a stockholder, where his stock has been transferred on the books of the corporation without his authority and he still retains his certificate, so that a complaint for a writ of mandate showing a transfer of plaintiff's stock under such circumstances is sufficient as against a demurrer. p. 631.

3. CORPORATIONS.—*Stock.*—*Transfers.*—Where a stock certificate issued by a corporation provided that the stock was transferable only on the books of the corporation in person or by attorney and on surrender of the certificate, the corporation is charged with notice of such provision and cannot make a transfer that is binding on the holder of such certificate without the same being surrendered, especially where the evidence shows such transfer to have been unauthorized. p. 637.

4. CORPORATIONS.—*Stock.*—*Transfers.*—*Evidence.*—In an action in mandamus by a stockholder to compel the corporation to recognize him as a stockholder, where defendant alleged that plaintiff's stock had been transferred on the books of the company, the testimony of one of defendant's directors to the effect that at the time of the alleged transfer, the plaintiff's son, who made such transfer, stated that he was signing his mother's name without her knowledge or consent, is conclusive against the defendant as showing notice that the transfer was unauthorized. p. 638.

5. APPEAL.—*Review.*—*Evidence.*—*Findings.*—The finding of the trial court on a question of fact as to which the evidence is conflicting, is conclusive on appeal, since the Supreme Court will not weigh the evidence. p. 638.

6. CORPORATIONS.—*Stock.*—*Unauthorized Transfer.*—*Effect.*—Compelling a corporation by mandamus to recognize plaintiff as a stockholder, notwithstanding a transfer of plaintiff's stock to a third person appears upon the books of the corporation, does not have the effect of working an increase of defendant's stock, where the transfer was unauthorized by plaintiff, since plaintiff's stock was never legally cancelled and the stock issued pursuant to such transfer was illegal and void; nor can plaintiff's rights be affected by the fact that such illegal and void stock remains uncancelled. p. 639.

From Vanderburgh Circuit Court; *C. A. DeBruler,* Judge.

Action by the State of Indiana, on the relation of Susan Kellogg, against The Citizens National Bank. From a judgment for the relatrix, the defendant appeals. *Affirmed.*

*Woodfin D. Robinson* and *William E. Stilwell,* for appellant.

*Albert W. Funkhouser* and *Arthur F. Funkhouser,* for appellee.

ERWIN, J.—This was a suit by appellee against appellant in the Vanderburgh Circuit Court, on a complaint for mandate, in one paragraph, which complaint, omitting the formal parts is as follows: "Plaintiff complains of the defendant and says that the defendant is now and has been for —— years last past, a corporation duly organized under the laws of the United States as a National Bank; that said defendant during all of said time has been engaged in the banking business as a National Bank in the city of Evansville, Indiana. This relatrix avers that on the 3rd day of October, 1905, she became the owner of seventy (70) shares of the par value of one hundred dollars per share of the capital stock of said bank; that said shares and the certificate representing the same were duly issued to this relatrix on the 3rd day of October, 1905, and the relatrix is and was on the 3rd day of October, 1905, the owner of the same in her own right, and is in possession of said certificate. That on the —— day of January, 1910, as the relatrix was informed the capital stock of the defendant bank had become impaired, and the relatrix was, on the 21st day of January, 1910, notified by the directors of the defendant bank that the capital stock had been impaired and that it was necessary that the deficiency be made up by an assessment on the shareholders pro rata to the amount of the capital stock of each shareholder; that the proportion of said assessment made against the relatrix, on account of her stock amounted to seven thousand dollars; that a meeting of the shareholders of the defendant bank would be held on the 21st day of February, 1910, at the said defendant Citizens National Bank, for the purpose of considering and voting on the question of paying the assessment, within

three months from the 21st day of January, 1910, the date of the notice received from the Comptroller of the Currency of the United States of the impairment of the capital stock. That the relatrix was informed that at said meeting of the said shareholders of the defendant, The Citizens National Bank, that said assessment was voted. That thereafter on the 10th day of February, the relatrix notified the defendant, in writing, that she intended to pay and would pay her assessment of seven thousand dollars ($7,000) upon the said stock so held by her in said bank, and thereafter, to wit: on the 24th day of February, 1910, and within less than three months after the receipt of said notice of said assessment, the relatrix tendered the said defendant seven thousand dollars ($7,000) to cover and pay said assessment; that the defendant wrongfully refused to accept and receive the same and wrongfully refused to treat the relatrix as a stockholder and wholly denied her the rights and privileges of the stockholders, and wrongfully refused to acknowledge her as a stockholder in The Citizens National Bank. That thereafter the relatrix again, to wit: on the 11th day of March, 1910, and within the three months given the relatrix, under the law of the United States, to pay said assessment tendered to the defendant the sum of seven thousand dollars ($7,000) in gold coin of the United States in the value of seven thousand dollars ($7,000) in payment of said assessment against the relatrix on account of said stock in said bank and that said defendant wrongfully refused to accept and receive said money in payment of said assessment, and refused to acknowledge any of the relatrix's rights and privileges as a stockholder in said bank and denied that the said relatrix was the owner of said stock or any other stock in said defendant's bank. That the defendant does now and has at all times since the 14th day of February, 1910, refused to recognize the plaintiff as a stockholder in said bank and has denied, and now denies

her any and all the rights and privileges of a stockholder. That on the —— day of January, 1910, the said bank declared and paid to its other stockholders a dividend on the stock held by them at said time, that said dividend amounted to three per cent of the par value of said stock so held by the other stockholders; but that the defendant has wrongfully failed and refused to pay said dividends or any part thereof to the relatrix, although entitled thereto as a stockholder as aforesaid. That the relatrix has at all times since the 24th day of February, 1910, and now is ready and willing and able to pay said assessment on her said stock of seven thousand dollars; and now offers and is willing, ready and able so to do whenever the defendant will accept and receive the same. Wherefore the plaintiff asks an alternative writ of mandate issue out of this court commanding the defendant to appear and show cause why a peremptory writ of mandate should not issue in this cause, demanding the defendant to recognize the relatrix as the owner of seventy shares of the capital stock of the defendant, the said Citizens National Bank, as represented by the certificate of stock now owned and held by her, and that she be recognized and granted the privileges and rights due her as such stockholder and that she be declared the owner of said seventy (70) shares of capital stock of said company of the par value of one hundred dollars ($100) each and for all other proper relief.''

To this complaint appellant demurred for want of sufficient facts to constitute a cause of action. This demurrer was overruled by the court, to which ruling appellant excepted. Appellant then answered said complaint in three paragraphs. The first was a general denial. The second paragraph of answer, omitting the formal parts is in the words and figures following, to wit: ''The defendant for a further and second paragraph of answer to plaintiff's complaint says that prior to the 21st day of February,

1910, the relatrix was the owner of seventy shares of the par value of one hundred dollars ($100) per share of the capital stock of the defendant bank.''

Appellant further avers in its second paragraph of answer that the appellee or relatrix sold and transferred to Hilary E. Bacon and Charles W. Cook, on January —, 1910, the said seventy shares of stock mentioned in plaintiff's complaint, and that said Bacon and Cook, in their individual capacity, purchased the same from said relatrix; the said Bacon and said Cook afterwards, to wit: on January —, presented to the defendant bank the seventy shares of stock to be transferred on the books of said bank, and said last mentioned time the said stock was transferred to said Bacon and the said Cook by the defendant bank and since the last named day the said bank has recognized the said Bacon and the said Cook and their assigns as the owners of the said seventy shares of stock mentioned in plaintiff's complaint. And that since January —, 1910, when said stock was sold and transferred to the said Bacon and the said Cook, the said relatrix has not owned, nor is she now the owner of any of the shares of the capital stock in the defendant bank. The third paragraph of answer is similar to the second, except that in alleging the sale of the stock they aver that at the time hereinafter mentioned and prior thereto one Okley H. Kellogg is, and was the duly authorized and acting agent and attorney of the said relatrix and was empowered and authorized by said relatrix to sell and transfer for her, and in her name, the said stock, owned and held by said relatrix as aforesaid. That on or about January —, 1910, the said relatrix, acting by and through her agent and attorney for a consideration of the payment of the assessment, then standing against said stock, and the further consideration of $1, which was at the time paid to the duly authorized agent and attorney of said relatrix and received by said agent and attorney of said relatrix, the said relatrix sold

and transferred to Hilary E. Bacon and Charles W. Cook the said seventy shares of stock mentioned in the plaintiff's complaint. They further aver that since the purchase by Bacon and Cook that the stock was transferred on the books of the bank to the said Bacon and Cook and that they have since recognized the said Bacon and said Cook as the owners of said seventy shares of stock mentioned in plaintiff's complaint.

Appellee filed two paragraphs of reply, verified, in the first of which the relatrix denied having sold the shares of stock in the bank to any person and in the second paragraph the relatrix denied that Okley H. Kellogg was authorized by the relatrix to sell or transfer her shares of stock in the bank. The relatrix also filed a reply in general denial to the second and third paragraphs of answer.

The court having been requested by the plaintiff to make special findings of facts in this case, and conclusions of law thereon, found the facts to be as averred in the plaintiff's complaint, finding: (1) That the defendant, The Citizens National Bank of Evansville, Indiana, is now and has been for more than ten years last past a corporation duly organized under the laws of the United States a national bank, during all of said time engaged in the banking business as a national bank of Evansville, Indiana. (2) That the relatrix Susan H. Kellogg, on October 3, 1905, became the owner of said seventy shares at the par value of $100 each of the capital stock of the defendant, and upon said date there was issued to said relatrix by the defendant, a certificate presenting said seventy shares of stock, which is in the words and figures following:

"457— This certifies that 70 Shares. Susan H. Kellogg, is the owner of seventy shares of one hundred dollars each of the capital stock of the Citizens National Bank, Evansville, Indiana, transferable only on the books of the bank in person, or by attorney and on the surrender of this certificate. In witness whereof, the

seal of the bank and the signatures of the President and Cashier are hereunto affixed. Evansville Indiana, October 3rd 1905. The Citizens National Bank. S. P. Gillett. President. W. F. Swomstedt. Cashier. (Seal)''

We have set out this certificate of shares, for the reason that it indicates in what manner the same may be transferred, and will become important in the decision of this case. The court further found that this certificate of stock so issued by the defendant to the relatrix, was delivered to the said relatrix by the defendant bank, and that the relatrix has been the owner of said stock in her own right, and that the said relatrix has had continued, exclusive possession of said certificate of stock since the date of issuance thereof. The court in subsequent findings found that the stock of the defendant bank had become impaired and that the directors of said bank on January 21, 1910, notified the relatrix and other shareholders of said bank, of the impairment of the capital stock of said bank, and that the assessment on her said seventy shares of stock amounted to $7,000, and unless the deficiency of the capital stock of said bank was made good by assessment on the said stockholders of said bank pro rata to the amount of capital stock held by each, the bank would be placed in liquidation; and called a meeting of the shareholders of said bank to be held on February 21, 1910. That this notice was delivered to the relatrix and on February 10, 1910, the relatrix notified the defendant that she would pay her assessment of $7,000 on her seventy shares of stock held by her and that thereafter, to wit: on February 24, 1910, she tendered to the defendant $7,000 in payment of her assessment on her seventy shares of stock, which payment was by the defendant refused.

The court further found that the relatrix tendered to the defendant, The Citizens National Bank $7,000 in gold coin in payment of said assessment upon her said seventy shares of stock; that the defendant refused to receive payment

thereof, and alleged as a reason for its refusal, that it did not appear upon the books of said defendant bank, that said Susan H. Kellogg was the owner of any shares of stock in said bank. The court further found that the defendant has at all times since January 29, 1910, refused to grant the relatrix any rights or privileges as a stockholder in said bank, and has at all times since January 29, 1910, denied that the relatrix was the owner of any stock in said defendant bank. The court further found that relatrix has at all times since February 24, 1910, and is now willing and able to pay said assessment, on her said seventy shares of stock, and is ready and willing and able to pay the same whenever the said defendant will accept and receive the same. The court further found that relatrix, Susan H. Kellogg, has never assigned, sold or transferred the seventy shares of stock, issued to her by this defendant, or any part thereof. The court further found that relatrix did not authorize Okley H. Kellogg, or any person to assign, sell or dispose of the seventy shares of stock held by her in the defendant bank or any part thereof, and any attempted or pretended assignment was without legal authority of said relatrix and was without the knowledge or consent of said relatrix.

Upon the foregoing facts the court stated the following conclusions of law: (1) The relatrix, Susan H. Kellogg is the owner of seventy shares of the par value of $100 each of the capital stock of the defendant, The Citizens National Bank of Evansville, Indiana. (2) The relatrix is entitled to judgment and writ of mandate of this court commanding the defendant, The Citizens National Bank of Evansville, Indiana, to recognize the relatrix as the owner of seventy shares of stock in said defendant bank and to grant her the privileges and rights due her as a stockholder, upon the payment by her to the said defendant of $7,000 upon the assessment made by the defendant bank upon said stock. That judgment and decree should be entered in accordance with the foregoing conclusions of law.

To each of the first and second conclusions of law the appellant duly excepted. Appellant thereupon filed a motion for a *venire de novo* upon the grounds that the special findings were so defective, uncertain and ambiguous that no judgment could be rendered thereon; that the findings contain the evidence and not the facts established by the evidence; that the findings do not state whether appellant has or has not any of the capital stock of the bank, which may be placed upon the books, in the name of the relatrix and that the findings do not state, that at the time of the filing of this suit appellant has not had and has not now any of the stock of said bank; and that during all of the time the entire capital stock has been held by persons other than the relatrix. The motion for a *venire de novo* was overruled, to which ruling appellant excepted.

Appellant thereupon filed a motion for a new trial on the grounds that the special findings are not sustained by sufficient evidence; and that the findings numbered from 1 to 12 are not sustained by sufficient evidence, and that the findings are contrary to the evidence; the special findings numbered from 1 to 12 inclusive are contrary to the evidence and that the special findings of the court are contrary to law. The motion for a new trial was overruled to which ruling appellant excepted.

Appellant then filed its motion in arrest of judgment upon the ground that the complaint does not state facts sufficient to constitute a cause of action; and that the sole defendant, The Citizens National Bank, is without power or authority to issue any stock to the relatrix, in addition to that now outstanding, and that the undisputed evidence shows that all of the authorized capital stock of the bank has been issued and is now owned and held by persons other than the relatrix.

The questions presented by appellant in its brief, we are inclined to believe, are upon the wrong theory of this case. As we understand the petition in this case it is simply that

the relatrix be recognized by the bank, and that she is now and has been since 1905, the holder of stock in said bank to the amount of $7,000; that the bank has failed and refused to recognize her as such stockholder and has denied to her the privileges of a stockholder; and has refused to pay to her any dividends and allow her to pay her assessment upon her stock; and her prayer for relief is, that she be recognized by the said defendant, The Citizens National Bank, as the owner of seventy shares of stock of the defendant, and that she be recognized and granted the privileges and rights due her as such stockholder, and that she be declared the owner of said seventy shares of said stock in said company.

To the petition of the appellee, appellant voluntarily appeared and filed a demurrer. In such case the sufficiency of the complaint is determined as in any other action. *Pfister* v. *State, ex rel.* (1882), 82 Ind. 382; *Wren* v. *City of Indianapolis* (1884), 96 Ind. 206. The sufficiency of the complaint depends upon the right of the appellee to the privileges of a stockholder of the appellant company. While no authority of the State of Indiana is directly cited by either of the parties, directly bearing upon the question, yet we have authority upon this question in numerous decisions, of other courts, of different states of the Union, and of the Supreme Court of the United States. *Western Union Tel. Co.* v. *Davenport* (1878), 97 U. S. 369, 24 L. Ed. 1047; *Pratt* v. *Taunton Copper Mfg. Co.* (1877), 123 Mass. 110, 25 Am. Rep. 37; *Herbert Kraft Co. Bank* v. *Bank of Orland* (1901), 133 Cal. 64, 65 Pac. 143; *Pollock* v. *National Bank* (1852), 7 N. Y. 274, 57 Am. Dec. 520.

In the case last cited the Misses Pollock were the acknowledged owners of fifty shares of the National Bank stock, standing in their names, on the books of that institution, with the certificates, the evidence of their title in their possession. This stock was subsequently transferred from their names to the names of other persons by the permission of the

bank, which received and cancelled the original certificates and has ever since refused to pay dividends to the complainants, or in any way to recognize them as stockholders in the institution, and denied their title to any interest in the capital stock of the institution. All this was done without any authority or assent, express or implied, upon the part of the true owners, and the question is, are they entitled to any relief. It is said that inasmuch as the transfer was made by virtue of a forged power of attorney the stock was still the property of the complainants. The title to stock in the abstract without any legal evidence of said title, without the power of a sale, or power of receiving dividends, is not the ownership which the complainants once possessed and of which they have been deprived by the agents of the bank. The court says further that complainants seek affirmative relief which the bank refuses upon the ground that the complainants had no claim to any stock but have duly parted with all their title. The court further says, "I think the bank is bound to issue new certificates and account for the dividends."

In the case of *Pratt* v. *Taunton Copper Mfg. Co., supra,* the facts were as follows: "The plaintiff was the owner of shares in each of the defendant corporations, and held certificates therefor, which were taken from her house without her knowledge, and, together with a forged power of attorney in her name to the corporation, delivered to W. N. Field & Company, brokers, for sale. Field & Company employed Hawes & Henshaw, stock auctioneers, to sell the shares by auction, and they sold them accordingly. Field & Company afterwards presented the certificate and power of attorney, in the one case, to the clerk of the corporation, duly empowered to make transfers, and in the other case to the cashier of the bank, and obtained from each a transfer of the stock and a new certificate, with a new number, in the name of Hawes & Henshaw, and delivered it to them; and Hawes & Henshaw delivered and assigned the new cer-

tificate to the purchaser in each case, who thereupon paid to them the sum for which he had bid off the stock, which was its fair market value, and they paid the same, less their commission, to Field & Company. The purchaser surrendered the new certificate to the corporation, and the corporation thereupon issued to him another certificate, which he now holds. Neither Hawes & Henshaw nor the purchaser had any knowledge, until after the transfer and issue of the certificate to him, that the plaintiff ever owned the shares; and the purchaser did not see any certificate of the stock until he paid for the one issued to him. The plaintiff brings a bill in equity against each of the corporations and the purchaser of the shares therein, praying that the latter may be ordered to surrender his certificates to the corporation to be canceled, and that the corporation may be ordered to issue to the plaintiff a new certificate for her shares, and to pay to her all dividends declared or to be declared thereon to the date of the decree, and for further relief. The questions reserved for our determination in each case by the justice before whom the hearing was had, are, (1) whether the plaintiff is entitled to the relief prayed for in the bill; (2) whether she is entitled to relief against defendant corporation alone''. The court, by Justice Gray, says that ''It is quite clear that the plaintiff could not be deprived of her stock without consent or negligence on her part, and that, the power of attorney in her name being forged, she may maintain each of these bills to compel the corporation to issue a certificate to her for her shares, and to pay her the dividends thereon.'' Citing numerous authorities. The court says further that ''If he had claimed under a transfer which he knew, or was bound to know, to be forged or invalid, a different case would have been presented.'' The court says further: ''Where, as in this case, the relief given to the plaintiff does not require or involve the decision of any question between codefendants, the court, unless by consent, does not and cannot decide

such a question so as to bind the codefendants as against each other, but leaves it to be settled in a proper suit between them. * * * The result is, that in each case there should be a decree for the plaintiff against the corporation, with costs.''

In the California case of *Herbert Kraft Co. Bank* v. *Bank of Orland, supra,* the supreme court of California was called on to pass on the sufficiency of the complaint in that cause. This was a case involving the transfer by the bank of Orland of certain stock belonging to the plaintiff bank and alleged that a pretended assessment was made against stock of the bank of the plaintiff, held as security by the defendant, Bank of Orland, but that said bank has no authority to levy any assessment. The stock was pretended to have been sold by the bank, on failure to pay the assessment as levied. The court, passing on the sufficiency of that complaint says on page 67: ''The main argument under this head is, that the complaint states a cause of action in equity, in the nature of an action to quiet title to personal property. We are not inclined to view the complaint in so strict a technical sense. It may not be a model of pleading, but it states the facts, so that we know the points relied upon by the pleader. The prayer of the complaint asks for such relief as to the court may seem proper. If the facts are proven as alleged, we think the court would have no trouble in determining the relief that is usual and proper in such cases.''

The court in that case quoting from Morawetz, Private Corporations §208, says, ''Upon the same principle, it has been held repeatedly that, if shares in a corporation are transferred upon the books, without the consent of the holder, under a forged assignment or power of attorney, the real owner is not thereby devested of his rights as shareholder, and is entitled to have his shares replaced upon the books, and to recover any dividends which have accrued upon them. If the corporation refuses to recognize the real

owner as a shareholder, or refuses to deliver him a new certificate of shares when entitled thereto, he may obtain specific relief by bill in equity, or may sue the company for the value of the shares.'' The court further says on page 68: ''There is no doubt of the authority of a court of equity to give a stockholder relief in such case as is here alleged.''

In the case of *Western Union Tel. Co.* v. *Davenport, supra,* the facts were that in March, 1865, Charles Davenport, a citizen of Ohio, died, leaving a widow and two minor children, the complainants here, his heirs. He was possessed at the time, beside other property, of eleven hundred and seventy shares of the capital stock of the Western Union Telegraph Company, which, upon the settlement of his estate were distributed equally between the widow and children, in whose name, respectively, they were entered upon the books of the company, and to whom separate certificates were issued. She was appointed guardian of the children. To her, as such, the certificates were delivered, declaring upon their face that only upon their surrender and cancellation they were transferable in person or by attorney on the books of the company. On the back of each one was printed a blank form of transfer and power of attorney. She put those belonging to the children and the ones belonging to her and some government bonds, in a tin box, which was locked and deposited in the Fourth National Bank of Cincinnati for safe keeping. Her brother Robert W. Richey, at that time and for some years after, an officer in the bank, had access to the box. He kept the key to it, during her absence from Cincinnati, in order to get for collection the coupons attached to the bonds when they became due. He afterwards took from the box the certificates belonging to Henry Davenport, and at a subsequent time those belonging to Catherine Davenport and forged their names to an alleged transfer and power of attorney and adding his own signature, as that of an attesting witness. In this form the certificates were sold and the purchaser using the forged power of attorney ob-

tained a transfer on the books of the company. On the discovery of the forgery, from the transfer of the stock, suits in equity were brought to compel the defendant, a corporation, created under the laws of New York to replace, in the name of the complainants, certain shares of its capital stock alleged to have belonged to them, and to have been transferred without their authority on its books to other parties; and to issue to them proper certificates for the same; and also to pay to them the dividends received on the shares since such unauthorized transfer. The court by Justice Field delivered the opinion and states as follows: "Upon the facts stated there ought to be no question as to the right of the plaintiffs to have their shares replaced on the books of the company and proper certificates issued to them, and to recover the dividends accrued on the shares after the unauthorized transfer; or to have alternative judgments for the value of the shares and the dividends. Forgery can confer no power nor transfer any rights. The officers of the company are the custodians of its stock-books, and it is their duty to see that all transfers of shares are properly made, either by the stockholders themselves or person having authority for them. If upon the presentation of a certificate for transfer they are at all doubtful of the identity of the party offering it with its owner, or if not satisfied of the genuineness of a power of attorney produced, they can require the identity of the party in the one case, and the genuineness of the document in the other, to be satisfactorily established before allowing the transfer to be made. In either case they must act upon their own responsibility. In many instances they may be misled without any fault of their own, just as the most careful person may sometimes be induced to purchase property from one who has no title, and one who may perhaps have acquired its possession by force or larceny. Neither the absence of blame on the part of the officers of the company in allowing an unauthorized transfer of stock, nor the good faith of the purchaser of

stolen property, will avail as an answer to the demand of the true owner. The great principle that no one can be deprived of his property without his assent, except by the processes of the law, requires in the cases mentioned that the property wrongfully transferred or stolen should be restored to its rightful owner. The maintenance of the principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded.'' Further the court says: ''There are numerous decisions of the English and American courts in accordance with the views stated. They are cited by counsel in their brief, and are given in a note to this opinion. We do not think it important to refer to them specially, for no number of adjudications can add to the force of a simple statement of the facts. The decree of the court below in each case must be affirmed; and it is so ordered.''

The facts in the case at bar present a stronger case than either of the cases above stated. In the case at bar the certificate of stock was never surrendered by the appellee. The court finds, as alleged in her petition, that she has continuously retained possession of the certificates of stock from the date of their issuance up to the time of the filing of her petition. On the authority of the cases above cited we hold that the complaint states a good cause of action.

In each of the cases above cited, the certificates of stock, the evidence of ownership, were in the hands of the persons asking that transfer be made, while in the case at bar the certificate of stock was absent, which was 3. sufficient in itself to put the purchaser on his inquiry as to the right of Okley H. Kellogg to transfer the stock. The appellant in issuing the stock made a provision in the certificate as to how the same could be transferred, as follows: *''Transferable only on the books of the bank in person or*

*by attorney, and on the surrender of this certificate",* (our italics) and with which provision appellant had notice, and could not make a transfer in any manner, especially where the evidence is conclusive that she never authorized the same to be done.

The court finds, and is sustained by sufficient evidence, that the appellee was the owner of the stock of the appellant in the sum of $7,000. That she never, at any time, parted with the possession or ownership of the same; that she never transferred the stock to any person or persons; that she never authorized any other person to transfer the same for her, or in her behalf; and further finds that the same had never been transferred with her knowledge and consent. We have examined the evidence in this cause and are fully satisfied that the evidence sustains the findings.

In his testimony, Charles W. Cook, one of the directors of the appellant, as set out in appellant's brief, testifies that Okley H. Kellogg did say to him that he was signing his mother's name without his mother's knowledge or consent. The testimony of the relatrix is that she never authorized her son, Okley, to sign or transfer her stock in the appellant bank; and the testimony of Okley H. Kellogg is to the effect that when he signed the transfer he did not know whether he was authorized to do so or not, and never had any authority from his mother to transfer the stock, either in writing or by verbal directions. We take it that the testimony of Mr. Cook is conclusive, and that appellant took this stock with notice that Okley H. Kellogg, son of the relatrix, had no authority to transfer the stock to the bank or to any other person.

The question is raised by appellant that Kellogg the son of the relatrix was the duly authorized agent of the relatrix to transfer the stock. There being a conflict in the evidence on that point, and the court having found that she had not authorized him, and that he was not

her agent to transfer the stock, this is conclusive and binding upon the parties and this court would have no right to weigh the evidence.

The question of the sufficiency of the complaint, the ruling of the court on the motion for a *venire de novo,* and the motion for a new trial, upon the grounds that the finding of the court is contrary to law and the motion in arrest of judgment have been considered jointly in what we have said heretofore in this opinion. The question is raised by appellant that the order of the court could not be complied with for the reason that it has not been found by the court that any stock remained in the hands of the company not assigned or transferred; and that the bank had no authority, without the consent of the Comptroller of the Treasury to issue any of this stock.

This stock of the relatrix was never properly cancelled and is still in existence and was in existence at the time of of the increase of stock to three hundred thousand 6. dollars. This stock, never having been transferred legally by the relatrix, is still in existence. If any other stock in excess of that authorized by law has been issued then that part issued in excess of the amount authorized by law would be unlawful and void. The bank could not cancel the stock of the *bona fide* holder, and issue other stock to other persons and deprive her of her right to participate in the concerns of the bank.

The question of an over issuance of stock is one that is not involved in this cause, and the fact that the bank issued other stock while this stock remains uncancelled can in no wise affect the ownership of this stock, or the right of the relatrix to participate in the affairs of the bank. The proper conclusions were reached in this case and there was no reversible error committed. Judgment affirmed.

NOTE.—Reported in 101 N. E. 620. Reported and annotated in 45 L. R. A. (N. S.) 1075. See, also, under (1) 26 Cyc. 466; (2) 26

Cyc. 342; (3) 10 Cyc. 596, 619; (4) 10 Cyc. 614, 615; (5) 3 Cyc. 360; (6) 10 Cyc. 619. As to what is the writ of mandamus and where it is allowable, see 89 Am. Dec. 728. As to mandamus to compel corporations to transfer stock on their books, see 51 Am. Rep. 798.