## PRINCE v. CHILDS CO. et al.

### Circuit Court of Appeals, Second Circuit. January 9, 1928.

### No. 120.

1. **Corporations ⊙⟶109—In suit to compel corporation to issue stock certificate, where plaintiff's certificate was stolen, parties to whom certificate was sold could not intervene, on theory that they guaranteed plaintiff's signature.**

In suit to compel issue to plaintiff of certificate for her stock, where her stock certificate had been stolen, and her signature had been forged and stock certificate sold, plaintiff's cause of action was founded on assertion of continuing title to her stock, and parties to whom stolen stock certificate was sold could not intervene, on theory that their guaranty of plaintiff's signature, when they presented her stock to corporation for transfer, gave them an interest in litigation.

2. **Equity ⊙⟶202—Cross-bill of interveners, setting up defense to complaint, in suit in which there was no controversy between plaintiff and themselves, held dismissible.**

In suit against corporation to compel issue to plaintiff of stock certificate, where her stock certificate had been stolen and sold, cross-bill of parties to whom stock certificate had been sold, who intervened without right and set up defense to complaint based on estoppel and laches, there being no controversy between plaintiff and themselves in suit, must be dismissed for lack of equity.

3. **Courts ⊙⟶313 — Defendant's cross-bill against citizen of same state intervening without right must be dismissed for lack of jurisdiction.**

In suit against corporation to compel issue to plaintiff of stock certificate, where her stock certificates had been stolen and sold, parties to whom stock certificate was sold, and who presented it to corporation for transfer, who were citizens of same state as defendant corporation, had no right to intervene and defendant's cross-bill against intervener must be dismissed for lack of jurisdiction.

4. **Corporations ⊙⟶109—Stockholder, whose stock certificate was stolen, could sue in equity to compel corporation to issue certificate; law remedy being inadequate.**

Stockholder, whose name was forged to stock certificate and stock certificate sold, could maintain suit in equity to compel corporation to issue stock certificate, since her rights to advantages and earnings which might inhere in stock were different, and might be very much superior to anything which she could obtain from mere decree for damages, and action at law was inadequate.

5. **Corporations ⊙⟶147—That stockholder gave secretary, forging name to stock certificate, access to safe-deposit box, and ordered stock through secretary, did not show negligence or clothe secretary with apparent authority to indorse certificates, barring equitable right to have new certificate issued.**

That plaintiff stockholder gave secretary, who forged stockholder's name to certificate and sold same without authority, access to safe-deposit box, and occasionally ordered purchases of stock through secretary, though plaintiff always paid brokers by her own check, and allowed secretary to deposit dividend checks, and permitted secretary to open mail containing checks, did not show negligence or clothe secretary with apparent authority to indorse plaintiff's certificate of stock for any purpose barring plaintiff's right to equitable relief by compelling corporation to issue new stock certificate.

6. **Evidence ⊙⟶21—It is common knowledge that many people are allowed to negotiate for purchase of property and indorse depositor's name on checks without authority to sell.**

It is common knowledge that scores of people are allowed to negotiate for purchase of stocks, as well as houses and land, and to sign depositors' names on backs of checks drawn to their order, without any authority, real or supposed, to draw checks, sign deeds, indorse certificates, or take other steps which finally assume to sell and pass title to property.

7. **Corporations ⊙⟶109—Plaintiff held not barred, in suit to compel issue of certificate, by laches in not discovering theft of certificate earlier.**

Plaintiff, whose secretary had forged plaintiff's name to stock certificate and sold same, *held* not barred, in suit against corporation to compel issue of stock certificate, by laches in not discovering theft at an earlier date, where certificate was stolen in 1923, and plaintiff had no reason to mistrust secretary, and was away studying medicine most of time, and secretary had rendered statements of deposits of dividends, and plaintiff did not discover disappearance of stock until 1925.

8. **Corporations ⊙⟶147—Forged transfer of stock did not alter stockholder's status, and she was entitled to new certificates and back dividends.**

Forged transfer of plaintiff's stock did not alter status of plaintiff, who still had all her rights as stockholder, and simply lacked indicia of ownership and earnings derived from shares, and plaintiff was entitled to new certificates and back dividends.

**9. Corporations ⬤⟼147—Stockholder could claim dividends, though secretary, forging certificate, paid supposed dividends to conceal theft.**

Where stock certificates were forged by plaintiff's secretary, plaintiff could claim full back dividends, which company had never paid plaintiff, even though secretary deposited sum supposed by plaintiff to represent dividends in plaintiff's account in order to conceal theft.

**10. Corporations ⬤⟼109—Alternative money judgment, not prayed for, cannot stand.**

In suit against corporation to compel corporation to issue certificate of stock to plaintiff, where her stock certificate had been stolen, alternative money judgment, based on conversion of stock, not prayed for in bill, could not stand.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Anna Agassiz Prince against the Childs Company, in which Stone, Prosser & Doty intervened and filed a so-called cross-bill, and defendant filed a so-called cross-bill against intervener. From the decree, each of the parties appeal. Decree modified.

Appeal by each of the foregoing parties from a decree of the District Court for the Southern District of New York, directing the defendant Childs Company to deliver to the plaintiff 200 shares of its common stock, and in the event of failure so to do awarding judgment to plaintiff against Childs Company in damages for conversion of the same; also awarding to Childs Company judgment against Stone, Prosser & Doty for all payments made by the former to plaintiff; also dismissing the so-called cross-bill of Stone, Prosser & Doty against the plaintiff. Decree modified.

The original suit arose out of an attempt by the plaintiff to recover her stock in Childs Company, which had been taken from her safe-deposit box in Boston by one Sweeney, who had forged her signature to the certificate and sold the stock to Stone, Prosser & Doty, stockbrokers in New York. Sweeney had been a secretary of plaintiff's father for 20 years, was highly trusted, and had joint access with plaintiff to her safe-deposit box in Boston, so as to cut off plaintiff's coupons and deposit them. Sweeney also sometimes opened plaintiff's mail and deposited her dividend checks. On some occasions, plaintiff instructed Sweeney to buy stock for her, but furnished her own check to the broker in payment. Though plaintiff's home and family were in Boston, she came to New York in 1920 to study medicine, and was there most of the time until she took her degree in May, 1924. In that month she was married and went abroad. Late in 1923, she had heard that her stock in the Childs Company (originally 40 shares) was to be exchanged for 200 shares of new stock, and instructed Sweeney to make the exchange. Sweeney reported that this had been done, and sent statements to plaintiff indicating the deposit in plaintiff's bank account of dividends as they accrued. There was no evidence that the exchange required an indorsement of the certificate by plaintiff, and Sweeney never in fact made the exchange. Stone, Prosser & Doty, who apparently were dealing in stock of Childs Company, in November, 1923, sent a card, addressed to plaintiff at No. 14 Ashburton Place, her father's office at Boston, in which they offered to buy or sell stock of the Childs Company at stated prices. Sweeney entered into correspondence with them, signing the letters in the name of the plaintiff, and in the end forwarded to them for sale the certificate for 40 shares, with a forged indorsement purporting to be in plaintiff's name. The stock was sold and the check sent by mail to No. 14 Ashburton Place, drawn to plaintiff's order. Sweeney returned it to Stone, Prosser & Doty in a letter, signed in plaintiff's name, asking them to use the proceeds of the sale of stock in the purchase of bonds, which were bought by the brokers and forwarded by express to No. 14 Ashburton Place. Sweeney receipted for the package in plaintiff's name and converted the bonds.

Plaintiff did not discover the disappearance of her stock until February, 1925, when she visited her box and ascertained that the stock, as well as some of her bonds, were missing. Sweeney confessed the theft, was indicted, pleaded guilty, and given a prison sentence by the Massachusetts court. After the investigation, which disclosed the forgery, the plaintiff promptly made claim to the defendant Childs Company for restitution of the stock, and thereafter brought this suit to compel an issuance to her of 200 shares of stock and all unpaid dividends. The plaintiff did not visit her box frequently. She was away from home most of the time in New York, studying medicine; after her graduation in May, 1924, she married, and thereafter went and for some time remained abroad. Moreover, she had no reason for visiting the box between the date of the conversion of her stock and February, 1925, for she trusted Sweeney and believed from the latter's statements that she was regularly getting her coupons, as well as the dividends

on the Childs Company stock. There can be no doubt that plaintiff had never authorized Sweeney to indorse any of her certificates of stock. Stone, Prosser & Doty, while guaranteeing the signature on the certificate as that of plaintiff, had never seen her signature, and furnished the guaranty merely because the stock came from what was regarded as an authentic source, and a guaranty under such circumstances was customary.

The plaintiff is a citizen of Massachusetts, and Childs Company a New York corporation. After this suit was brought, Stone, Prosser & Doty, citizens of New York, residing in the Southern district, intervened in this suit upon the theory that their guaranty of plaintiff's signature when they presented her stock to Childs Company for transfer gave them an interest in the litigation. They filed an answer, in which they set up separate defenses to the bill of complaint, which they termed a cross-bill, and to this pleading plaintiff filed a reply. Childs Company also filed a so-called cross-bill against Stone, Prosser & Doty, asking reimbursement (by reason of the guaranty of the latter) in case Childs Company should be held liable in the suit.

The court awarded an alternative money judgment against Childs Company, in case the latter had not sufficient treasury stock to make the plaintiff good for the forged certificates, and likewise granted a decree against Stone, Prosser & Doty, in favor of Childs Company, upon its so-called cross-bill, and dismissed the cross-bill of Stone, Prosser & Doty against the plaintiff. It further allowed $240 to the Childs Company, because plaintiff had received that amount as supposed dividends from Sweeney, paid by the latter merely to conceal the embezzlement.

Reynolds & Goodwin, of New York City (John Reynolds, of New York City, of counsel), for plaintiff.

Barber, Fackenthal & Giddings, of New York City (Joseph Diehl Fackenthal, of New York City, of counsel), for Childs Co.

Charles Franklin, of New York City (Charles L. Minor, of New York City, of counsel), for Stone, Prosser & Doty.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). [1] We can discover no justification for the intervention of Stone, Prosser & Doty. The main suit was to compel the issue to the plaintiff of a certificate for her stock and the payment to her of all unpaid dividends. No alternative relief was asked to recover damages for conversion, and no attempt was made to ratify the sale of the forged certificate and follow the proceeds. The bill relied solely on an ownership, which had never been divested. Any liability of Stone, Prosser & Doty to Childs Company, because of a guaranty of the plaintiff's signature, made to Childs Company at the time the forged certificate was presented for transfer, was unrelated to plaintiff's claim, and a matter with which she had no concern. Her cause of action was founded on an assertion of a continuing title to her stock, which gave her a right to secure the proper muniments, as well as the earnings derived therefrom. Stone, Prosser & Doty had no interest in the stock. The rights of Childs Company against Stone, Prosser & Doty could not be asserted in a dependent bill, ancillary to the main suit, but had to be determined in an entirely separate action for breach of warranty, where lack of diverse citizenship between Childs Company and Stone, Prosser & Doty would be fatal to federal jurisdiction. The situation is quite different from that of Rickey Land & Cattle Co. v. Miller & Lux, 218 U. S. 258, 31 S. Ct. 11, 54 L. Ed. 1032.

[2, 3] The so-called cross-bill of Stone, Prosser & Doty is not a cross-bill at all. After intervention, and under plaintiff's protest, they proceeded to set up defenses to the complaint, based on estoppel and laches, in a suit in which there was no controversy between the plaintiff and themselves. Accordingly the bill must be dismissed as against Stone, Prosser & Doty for lack of equity, and the cross-bill of Childs Company against them must be dismissed for lack of jurisdiction.

[4] The case is thus reduced to a cause of action against a single defendant for the restoration of the stock and dividends. The defenses relied upon are: (a) That the plaintiff has an adequate remedy at law; (b) that she has been guilty of such negligence as to debar her from equitable relief; (c) that she is barred from recovery by laches; (d) that she is not entitled to a decree for the recovery of 200 shares of stock, unless Childs Company has treasury stock to that extent available.

As for the first point it is perfectly settled that the plaintiff is entitled to a remedy in equity. Her rights to the advantages and earnings which may inhere in her stock are quite different, and may be very much superior to anything which she can obtain from

a mere decree for damages. An action at law would therefore be an inadequate remedy, and she is not bound to resort to it. A remedy in equity has been granted in numerous cases. Western Union Telegraph Co. v. Davenport, 97 U. S. 369, 24 L. Ed. 1047; Wilson v. Colorado Mining Co. (C. C. A.) 227 F. 721; Barton v. North Staffordshire Ry. Co., 38 Ch. 458; Taylor v. Midland Ry. Co., 8 H. L. C. 751; Citizens' Nat. Bank v. State, 179 Ind. 621, 101 N. E. 620, 45 L. R. A. (N. S.) 1075; Pratt v. Boston & Albany R. R., 126 Mass. 443; Pollock v. National Bank, 7 N. Y. 274, 57 Am. Dec. 520; Travis v. Knox Terpezone Co., 215 N. Y. 259, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387; Penn Co. v. Franklin Fire Ins. Co., 181 Pa. 40, 37 A. 191, 37 L. R. A. 780.

[5, 6] The negligence relied upon to debar equitable relief is based upon giving Sweeney access to plaintiff's safe-deposit box; occasionally ordering purchases of stock through Sweeney, though plaintiff always paid the brokers by her own check; allowing Sweeney to deposit dividend checks and coupons in plaintiff's bank account; and acceding to the practice, which obtained in the Boston office, of having mail thought to contain checks for plaintiff opened by her father or Sweeney.

We do not regard such conduct as negligent, or as sufficient to clothe Sweeney with apparent authority to indorse plaintiff's certificates of stock for any purpose. That is an act very different from depositing checks in plaintiff's bank account, and even signing the latter's name for that purpose. It is common knowledge that scores of people are allowed to negotiate for the purchase of stocks, as well as houses and land, and to sign depositors' names on the backs of checks drawn to their order, without any authority, real or supposed, to draw checks, to sign deeds, indorse certificates, or take other steps which finally assume to sell and pass title to property. To hold the contrary would be by our decision in effect to clothe agents with authority which they do not have, and no one supposes them to possess. We can see no reason for taking such a revolutionary step, and are referred to no authority which would justify it. There seems to be no substantial difference between the present case and Telegraph Co. v. Davenport, supra, where a man had access to a box containing certain certificates of stock of the Western Union, forged the signatures of the owners, and converted the stock. It was held that the company must replace the stock. In Pollock v. Bank, supra, a brother intrust-

ed with stock certificates, and with power to draw dividends, forged powers of attorney and transferred the stock. The company was held liable. The case of Penn Co. v. Franklin Fire Ins. Co., supra, is likewise indistinguishable.

[7] The defense of laches in not discovering the theft at an earlier date is likewise unavailing. The plaintiff had no reason to distrust Sweeney. The latter had long been her father's employee, and the regular statements rendered of deposits of dividends and coupons appeared to reflect the true state of affairs. We know of no principle of law which requires the owner of property to be vigilant in protecting it from theft, or, if he fail, bear the loss as against all the world. The case is quite different where a holder of securities signs a power of attorney with the name of the transferee in blank and delivers it to his brokers. McNeil v. Bank, 46 N. Y. 325, 7 Am. Rep. 341. Here was no apparent authority, but a bare forgery.

[8] It is not necessary to inquire whether the Childs Company should issue stock to the plaintiff at the risk of an over-issue, for their stock is listed on the Exchange and can be purchased in the open market. A suit requiring the corporation to procure stock for a shareholder, whose certificate had been transferred by means of a forgery, was upheld by the Supreme Judicial Court of Massachusetts in Pratt v. Boston & Albany R. R., 126 Mass. 443. See, also, Wilson v. Colorado Mining Co. (C. C. A.) 227 F. 721. But it is hard to see why the forged transfer in the present case should be regarded at all. It did not alter the status of the plaintiff, who still had all her rights as a stockholder and simply lacked indicia of ownership and the earnings derived from her shares in the company. She is entitled to new certificates and back dividends. Western Union Telegraph Co. v. Davenport, 97 U. S. 369, 24 L. Ed. 1047; Travis v. Knox Terpezone Co., 215 N. Y. 259, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387; Citizens' National Bank v. State, 179 Ind. 621, 101 N. E. 620, 45 L. R. A. (N. S.) 1075. It is not for her to indicate how the Childs Company are to satisfy those who have succeeded Stone, Prosser & Doty, and now hold stock originating in Sweeney's forged transfer. Plaintiff can rest on the claim that she never parted with her interest, and is entitled to the certificate as a muniment of title.

[9] The $240 which Sweeney deposited in the plaintiff's account was supposed by the latter to represent dividends from the stock in suit. It was in fact paid by Sweeney, who

converted the stock and other securities belonging to plaintiff, in order to conceal the theft. The plaintiff is not obliged to retain such a credit to her dividend account, when she accepted it without knowledge of the facts, and she may still claim her full dividends from the company, which has never paid them.

[10] The decree is modified, by dismissing the suit against the defendants Stone, Prosser & Doty, and the cross-bill of Childs Company against said defendants, as above provided, and by directing Childs Company to record plaintiff's stock ownership (including stock dividends accrued between December 6, 1923, and the satisfaction of the decree), and to deliver certificates therefor; also by granting a money judgment for the amount of the various cash dividends accrued on the stock from December 6, 1923, with interest from the dates of their accrual. The alternative money judgment based upon conversion of the stock should no longer stand, as it was not prayed for in the bill.