283 P.2d 605

**Mary F. LINDNER, Plaintiff and Respondent,**

v.

**UTAH SOUTHERN OIL COMPANY, a corporation, Defendant and Appellant.**

**No. 8045.**

Supreme Court of Utah.

May 16, 1955.

· Elliot W. Evans, Salt Lake City, for appellant.

Stewart, Cannon & Hanson, E. F. Baldwin, Jr., Jesse R. S. Budge, Salt Lake City, for respondent.

HENRIOD, Justice.

This case is here on rehearing and was reported before in 2 Utah 2d 74, 269 P.2d 847, where we held that plaintiff was not entitled to the amount of dividends declared by defendant and paid to one Leary by mistake, under circumstances outlined below. We now hold that plaintiff is entitled to the amount of such dividends for the reasons herein set forth. The judgment of the lower court is affirmed, with costs to plaintiff.

In brief, the facts are as follows: Before 1931 one Dalziel was the owner of record and the true owner of shares of the defendant corporation. In 1931 plaintiff became the lawful owner of such shares, and in 1951 she sold the same. Between 1931 and 1951, dividends were declared. Plaintiff did not advise defendant of her ownership or possession of the certificates before she sold them. Leary claimed to be the owner thereof by purchase from a broker, setting forth such claim, together with the assertion that the certificates had been lost, in an affidavit signed in 1949, which, together with a so-called "assignment" of interest from the administratrix of Dalziel's estate, and a bond to protect the company, he presented to the defendant,—all of such asserted claims being untrue. On the strength of the documents, defendant issued new certificates to Leary and paid him the accrued dividends,— all of which obviously was accomplished by mistake. On discovery of the error, defendant bought a like amount of stock and delivered it to plaintiff's vendee, conceding that plaintiff had been the owner of such certificates, but contending, however, that she had not been the owner of the dividends, basing such contention on the theory that the statute [1] protects a corporation in paying dividends to the record owner and that payment to an "assignee" of such record owner is the equivalent of payment to the record owner,—although the statute specifically does not say this can be done.

The record owner here had nothing to transfer, and any purported assignment by his administratrix could transfer

1. Title 16–2–34, Utah Code Annotated 1953.

nothing more. The argument that the record owner is entitled to receive the dividends and hence may assign such dividends. even though he no longer owns the stock,—or the dividends for that matter,— simply ignores rules of property, since a right to receive dividends does not in and of itself establish ownership therein, nor does it permit transfer thereof invulnerable to attack. Best that can be said about such right to receive dividends is that it clothes the one receiving them with the personality of trustee for the true owner, who, we have said, is the owner of the certificate as of the date the dividends were declared.[2] And best that can be said about the statute is that it arbitrarily will protect *a corporation*, by departing from orthodox principles relating to property, its ownership and incidents, because, as a practical matter, it would be an impossibility for a modern day corporation to ferret out each of its many thousand stockholders existing as of dividend day. Giving the corporation such protection requires strict adherence to the statute and cannot permit something to be read into the statute that isn't there.

We recognize that defendant's authority [3] does not square with our conclusions and that it recognizes rights in an assignee of the record owner, even though, on close analysis, such record owner may not have any dividends to assign, but only dividends which he should hold as trustee for the true stockowner. However, we can see no reason or logic in holding a corporation accountable to the owner of the certificate, but not to the owner of the dividends.

We cannot say that the corporation here was careful or free from negligence in accepting as gospel the statements of Leary that he was the owner of the stock and that the certificates were lost (neither of which facts was true), when the corporation, by the simple, easy device of insisting on making its check payable to the record owner or his estate, could have protected itself and its true stockholder and dividend owner beyond peradventure of doubt. So far as we discern this situation, Leary had no better right either to the certificates or the dividends than a forger or thief would have had, i. e., none would have any interest to transfer or own,—although a forger or thief at least would have possession and thus indicia of ownership,—something which Leary lacked. No one would contend that the corporation could protect itself by paying a forger or thief. The authorities hold that payment to such a person will charge the corporation with actionable negligence, and, as we have said, there seems to be no reason to treat a person in Leary's position any differently, or relieve a corporation in such case, where it has no immunity otherwise. We believe the authorities generally sustain our con-

2. Western Securities Co. v. Silver King Consol. Mining Co., 57 Utah 88, 192 P. 664.

3. Cleveland & Mahoning R. Co. v. Robbins, 35 Ohio St. 483.

clusions [4] and that defendant's position becomes untenable upon examination of the plain wording of the statute and the application of elementary principles relating to property, its ownership and transfer thereof.

WADE, J., concurs.

WORTHEN, Justice (concurring).

I concur in the result reached (and the views expressed) by Mr. Justice HENRIOD, but desire to make the following observations:

The former opinion of this Court published in 2 Utah 2d 74, 269 P.2d 847, seems to be predicated upon a statement which does not reflect the true facts and from which an erroneous conclusion was reached in that opinion.

The statement is made in the opening paragraph of that opinion that "between 1948 and 1950 defendant declared dividends on the thousand shares and paid them to the *record owner* before defendant had any notice of plaintiff's claim to the stock in question * * *" (Emphasis ours.)

It must be conceded that if the defendant had made payment of the dividends to the record owner, James H. Dalziel, plaintiff would have no rights except against Dalziel, but the dividends in this case were not paid to the record owner of the stock upon which the dividends were declared. The question therefore is, may a corporation pay dividends declared on its stock to one other than the owner of record of that stock (no element of estoppel being present) when it appears, erroneously, that the certificates of stock have been lost and the person claiming and receiving such dividends is not the record owner of the stock upon which the dividends were declared but the assignee of the widow and sole heir of the record owner, to whom new certificates of stock were issued by virtue of the provisions of Section 16–3–17, Utah Code Annotated 1953? That section permits the replacement of lost or destroyed certificates upon furnishing, among other things, a bond to protect the corporation against the rightful owner of said original certificates.

Section 16–3–3, U.C.A.1953 authorizes a corporation "to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner; * * *."

The original opinion, with great labor, argues that the defendant was justified in paying the dividends declared upon its stock to the owner of the certificates of stock issued, after the dividends were declared, to replace the stock which it assumed to be lost.

Had the defendant (as herein observed) paid the dividends to James H. Dalziel,

---

4. Holly Sugar Corp. v. Wilson, 101 Colo. 511, 75 P.2d 149; Citizens' Nat. Bank v. Kellogg, 179 Ind. 621, 101 N.E. 620, 45

L.R.A.,N.S., 1075; Telegraph Co. v. Davenport, 97 U.S. 369, 24 L.Ed. 1047.

plaintiff would have had no claim against defendant but would be obliged to seek recourse against Dalziel. It was likewise intimated in the former opinion and is the position of defendant here that since plaintiff failed to surrender the certificates received by her from Dalziel in exchange for new certificates, she cannot complain and should be estopped.

However, this Court should not read into our statutes something not there, nor should we give to them a meaning not reasonably intended. It is a feat of no mean accomplishment to say that because the corporation may recognize the stockholder of record, as shown upon its books, in paying dividends, that it may pay dividends to any person claiming to be the assignee, not of the stockholder, but of his widow, the sole heir and administratrix of his estate. Such judicial legislation is not to be indulged in. Section 16–3–1 declares:

"Exclusive manner of transfer.—Title to a certificate and to the shares represented thereby can be transferred only:

"(1) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(2) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person."

The provisions of Section 16–3–17, U.C. A.1953, permitting replacement of lost or destroyed certificates does not wipe out the rights of the holder of the original certificates if and when produced, nor the rights to dividends declared thereon. In fact, the statute fully recognizes the right of the owner or transferee of the original certificates. Here, however, no stock was lost and the case calls for no pronouncement as to the situation where stock is lost.

In fact, as we understand the position of defendant and the original opinion, it is conceded that Leary got no title to the 800 shares issued to Dalziel, either by reason of the assignment from the record owner's heir, or by reason of the new shares issued.

Certainly the widow, sole heir and administratrix, conveyed nothing by her assignment of all her right, title and interest; since neither she nor her husband at his death had any right, title or interest in any of the stock theretofore transferred to plaintiff.

It may indeed seem harsh to require the defendant to respond twice for the dividends. It was a great hardship for the defendant to go into the market and pay over $11,000 for 800 shares of stock to avoid an over issue. But that is a matter to be corrected by the legislature and not by this Court. Nor is anything said herein intended to prevent the owner of record, who has lost his certificates of stock and who furnishes the necessary bond to have new certificates issued in place thereof, from receiving dividends declared upon the stock before the new stock was issued. In fact, as the original owner upon the records of the company of that stock, he, and he alone, is entitled to receive payment of the dividends from the company under the provisions of Section 16–3–3.

McDONOUGH, Chief Justice (dissenting).

I dissent. The only question to be considered is whether a corporation, without knowledge that original stock certificates are owned by one other than the record owner may reissue stock upon proof that the stock is lost and pay dividends on that stock to an apparent transferee of the record owner, one Leary, without incurring liability to the true owner, Mrs. Lindner, for the dividends paid. There is no question that the corporation is under a duty to Mrs. Lindner to recognize the validity of the original certificates or that the dividends declared belong to the true owner, but merely whether our statutes, U.C.A. 1953, 16–2–34 and U.C.A.1953, 16–3–3, allowing the corporation to pay the dividends to the owner of record, are broad enough to permit the payment of dividends to an apparent transferee of the record owner with the same immunity from suit by the true owner.

It is agreed that Leary did not take any title to the shares of the corporation either by the assignment from the record owner's heir, who at that time had no interest to transfer, or by the issuance of new stock certificates by the corporation, which issued them in the belief that the original certificates were lost or destroyed. Thus, Mrs. Lindner could have brought suit on conversion against Leary to recover the moneys paid to him as dividends but which, assuming he was properly a record owner, he could only receive in trust for her, the true owner, absent her consent. Richmond Hill Realty Co. v. East Richmond Hill Land Co., 246 App.Div. 301, 285 N.Y.S. 424. The Utah cases cited by respondent Lindner as being discordant with the original opinion written in this case stand merely for the proposition that dividends declared belong to the true owner of the stock of the corporation. With this contention we agree, but it does not answer the fundamental question of whether Mrs. Lindner may take her election to recover against the corporation in lieu of the one who received the money for her benefit.

The corporation, in this instance, recognized its duty to Mrs. Lindner in purchasing 800 shares of its stock on the open market for cancellation to prevent an overissue when it was unable to regain possession of the certificates in Leary's hands. The relation a corporation sustains toward its stockholders is in its nature fiduciary and it is accordingly held that where certificates are outstanding representing shares of stock, it is the legal duty of the corporation to refuse to transfer such shares on its books without the production of the certificates; and any act done, or suffered to be done by it, which confers title to the shares upon one without possession and one who does not surrender the certificate, renders the corporation liable to the true owner for the conversion of his stock. Cushman v. Thayer Mfg. Jewelry Co., 76 N.Y. 365; Strange v. Houston & T. C. Railway Co., 53 Tex. 162. The duty imposed upon the corporation is weighty and it cannot excuse itself on the grounds of mistake or lack of knowledge that the representations made by the wrongdoer were false. Telegraph Co. v. Davenport, 97 U.S. 369, 24 L.Ed. 1047.

Whether the company is liable for the dividends paid on the stock, before it had notice of Mrs. Lindner's claim, depends upon other considerations. Even before the adoption of the Uniform Stock Transfer Act, various jurisdictions had held, in recognition of necessary policies of business expediency, that the corporation could pay dividends to the record owner. In this case, however, the mistake in the payment of dividends was occasioned by the fact of the wrongful transfer for which the corporation is absolutely liable. The only cases which have been discovered where there were no allegations of negligence or misconduct on the part of the corporation in making the transfer, as here, were briefed and discussed in the majority opinion in the prior report of this case, 269 P. 2d 847, and these cases hold that the corporation is justified in paying *to the order* of the record owner. Cleveland & Mahoning R. Co., v. Robbins, 35 Ohio St. 483; Brisbane v. Delaware, L. & W. R. Co., 94 N.Y. 204. The case of Holly Sugar Corp. v. Wilson, 101 Colo. 511, 75 P.2d 149 is not in point since the wrongful payment was brought about through the negligence of the corporation.

U.C.A.1953, 16–3–17 provides a means for forcing the issuance of a lost or destroyed certificate through court procedure where the corporation refuses to recognize the rights of the person applying for a replacement certificate. It is claimed that this statute is conclusive of the corporation's liability where it reissues stock under court order and, hence, a fortiori in a case such as the instant one where the issuance was a voluntary act of the corporation. After describing the necessity of service of process, notice, proof of loss, and a means of protection by

bond that the corporation may require, the statute concludes:

" * * * The issue of a new certificate under an order of the court as provided in this section shall not relieve the corporation from liability in damages to a person to whom the original certificate has been or shall be transferred for value without notice of the proceedings or of the issuance of the new certificate."

This view begs the question as to whether damages claimed by the true owner can include the loss of dividends as against the corporation when it has acted in good faith and in the exercise of appropriate diligence. It is agreed that the corporation would not be liable for the payment of dividends to the record owner if he were the person securing a new certificate; likewise, it is conceded that where the corporation accepts a forged certificate, makes a transfer on its books, and pays dividends to the forger, it is negligent toward its stockholder and must pay to him his entire loss, including the dividends. 12 Fletcher on Corporations, Sec. 5551.

We have not been directed to any cases determined under the Uniform Stock Transfer Act and recognize that under that Act, two views are possible. Under the view that the corporation's original breach of its duty continues or is renewed upon each payment of dividends to the person who was made record owner by its wrongful transfer of title, the corporation would be able to pay with impunity only an owner of record who had once been a true owner. This would place an insurer's burden upon the corporation where the stock was lost or destroyed, for it could not make a transferee a record owner even under court order, U.C.A.1953, 16–3–17, without incurring a double liability. Further, the present case illustrates how snarled the functions of the corporation might become were this strict rule adhered to. Leary presented better proof, probably, than could have Mrs. Lindner had her stock been lost, that he was the true owner of the stock. The company could not have paid the record owner or the estate of the record owner the dividend declared in December, 1948, for very shortly thereafter, it had actual knowledge that Leary claimed to be the true owner and hence would have been liable to him for the payment if his claim were valid. Steel v. Island City Mercantile & Milling Co., 47 Or. 293, 83 P. 783. The company had no notice of Mrs. Lindner until 1952 and could not have paid the dividend to her. Further, it could not have held the dividend in trust until such time as the certificates were surrendered, for a court order could have forced payment to Leary upon his proof that he was entitled to issuance of a new certificate.

Under the other view, in the absence of negligence on the part of the corporation, no investigation is required of the corpo-

ration when it pays dividends, unlike the situation of the transfer of title, for the statutes allow the corporation to pay the record owner. Therefore, there is but a single breach of its duty and the corporation may pay the record owner or another upon his order.

In the fields of personal and real property, the various states have enacted recording and registration statutes to apprise innocent third persons of their rights and obligations in dealing with property which has been wrongfully transferred unbeknown to them. The policy behind these statutes has proved beneficial and a similar policy was intended in the Uniform Stock Transfer Act wherein the corporation is allowed to pay dividends to the record owner. Mrs. Lindner, by failing to have the certificates transferred to her on the company's books, ran a risk of having the dividends paid to the owner of record. Although her ownership of the certificates was secure because of the higher duty owed by the corporation to her than in situations of a seller and buyer of real estate, it should be held that the corporation may pay dividends to the record owner in accordance with U.C.A.1953, 16-3-3 if the payee became a record owner through no negligence of malfeasance of the corporation.

CROCKETT, J., concurs in the dissenting opinion of Mr. Chief Justice Mc-DONOUGH.